PEOPLE ex rel. STEWART et al. v. FEITNER et al.

(Supreme Court, Appellate Division, First Department. June·17, 1904.)

1. TAXES—CORRECTING ASSESSMENT—INEQUALITY.

Under New York Charter of 1897 (Laws 1897, p. 324, c. 378) § 906, authorizing review of the determination of the board of taxes and assessments on the ground of inequality of assessment of real estate, in that it has been made at a higher proportionate valuation than the assessment of other real estate on the tax rolls of the city for the same year, the instances in which the inequality exists and the extent thereof being specified, one is entitled to relief only on showing generally that real property in the particular taxing district as a whole has been assessed at a ratio to its market value, and that considering this the assessment value of his property in relation to its market value was higher than the established ratio for the city; it is immaterial that certain pieces were taxed at a higher or a lower rate.

2. SAME—EVIDENCE.

Evidence on a proceeding to correct an assessment of real estate because of inequality held sufficient to sustain a finding of inequality justifying the relief.

Appeal from Special Term, New York County.

Certiorari on the relation of Lispenard Stewart, individually and as executor and trustee, and others, against Thomas L. Feitner and

others, as commissioners of taxes and assessments of the city of New York. From a final order reducing the assessment of certain real estate in the city of New York for taxation for the year 1899, defendants appeal. Affirmed.

Argued before O'BRIEN, HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

David Rumsey, for appellants.

John M. Bowers, for respondents.

INGRAHAM, J. This proceeding was commenced for the purpose of reviewing the action of the defendants in refusing to reduce the assessment for taxation of certain real estate in the city of New York. A writ of certiorari was issued, to which the defendants made a return. The defendants moved upon the petition, writ, and return to quash the writ, which motion was denied; whereupon the court appointed a referee to take evidence upon the issues raised by the petition and the return thereto, and report the same to this court, with his findings of fact and conclusions of law. The parties proceeded before the referee, who filed his report whereby he found that one of the pieces of property was assessed for taxation for the year 1899 in the sum of $50,000 over and above its value; that the other piece of property was assessed at the rate of $64^2/7$ per cent. of its value; that real estate throughout the borough of Manhattan, taken as a whole, was assessed on the second Monday of January, 1899, for the purpose of taxation, not to exceed 55 per cent. of its actual value; and that the ratio of the assessed value to actual value of real estate at the said date in the financial district of the city of New York in which the property of the relators was located did not exceed 50 per cent.; and, as a conclusion of law, that the assessment on No. 120 Broadway, for the purpose of taxation, should be reduced from $300,000 to $137,000, and that the assessment on Nos. 36 to 40 Rose street, for the purpose of taxation, should be reduced from $225,000 to $192,500. This report of the referee was confirmed by the Special Term, and a final order entered reducing the assessment in accordance with this finding, and from that order the defendants appeal.

The proceeding must thus be treated as one to correct an assessment upon real property upon the ground that it was erroneous by reason of inequality, in that the real property was assessed at a higher proportionate value than other real estate on the tax roll of the city for the same year was assessed; and the substantial question is one of fact, whether the conclusion of the referee is sustained by the evidence.

By article 11 of the tax law (chapter 908, p. 881, Laws 1896) provision is made for a review of the action of the taxing officers in the assessment of property for taxation. Section 250 provides that:

"Any person assessed upon any assessment roll, claiming to be aggrieved by any assessment for property therein, may present to the Supreme Court a petition duly verified setting forth that the assessment is illegal, specifying the grounds of the alleged illegality, or if erroneous by reason of over valuation, stating the extent of such over valuation, or if unequal in that the assessment has been made at a higher proportionate valuation than the as-

sessment of other property on the same roll by the same officers, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby."

Section 253 provides that:

"If it shall appear upon the return to any such writ that the assessment complained of is illegal or erroneous or unequal for any of the reasons alleged in the petition, the court may order such assessment, if illegal, to be stricken from the roll, or if erroneous or unequal, it may order a reassessment of the property of the petitioner, or a correction of his assessment upon the roll, in whole or in part, in such manner as shall be in accordance with law, or as shall make it conform to the valuations and assessments or other property upon the same roll and secure equality of assessment."

Under these provisions the Court of Appeals held in People ex rel. Warren v. Carter, 109 N. Y. 576, 17 N. E. 222, that to justify a reduction of the assessment upon the ground of inequality the relator must show, in addition to inequality of assessment, that he is or will be injured by the unequal assessment; that where there is no overvaluation of the relator's property it does not follow that he will be injured by an undervaluation of some pieces of property belonging to another; that if all the valuations on the assessment roll, other than that of the party complaining, were proportionately equal, and also proportionately lower than the valuation of his property, injury to the relator might perhaps be a just inference; but the mere fact that the claimant can show that his land is assessed proportionately higher than a certain other piece on the same roll does not alone show that he is aggrieved, or that he will be compelled to pay more than his just share of the aggregate tax; that "where the assessors in a particular case depart from a general rule or ratio of assessment which they have adopted, to the injury of the taxpayer in the particular case, the statute affords a remedy," but that the petitioner must show a state of facts from which a presumption justly arises that the inequality of which he complains will subject him to the payment of more than his just proportion of the aggregate tax; and this presumption is not raised by proof that in a particular instance property is assessed at a proportionately lower valuation than his own. And in the case of People ex rel. Allen v. Badgley, 138 N. Y. 314, 33 N. E. 1076, the same principle was applied.

The charter of 1897 (chapter 378, vol. 3, Laws 1897), which was in force at the time this assessment was made and these proceedings commenced, provides a system for the assessment of real property in the city of New York under which the defendants acted in making the assessment of this property for taxation. Section 889 provided that the deputy tax commissioners, under the direction of the board of taxes and assessments, should assess all of the taxable property of the several districts which might be assigned to them for that purpose by the said board, and they were required to furnish to the board a detailed statement of all such property, particularly describing each house, building, lot, pier, or other assessable property, and the sum for which said property under ordinary circumstances would sell; and section 892 provided that the assessed valuations of such property within the limits of the several boroughs of the city of New York should be entered in certain books, to be called "The An-

nual Record of the Assessed Valuation of Real and Personal Estate," which shall be open for examination and correction from the second Monday in January until the 1st day of May in each year. Section 895 provides that any person claiming to be aggrieved by the assessed valuation of real or personal estate may apply during that time to the board to have the same corrected. Section 896 provides that the said board may diminish at any time before the closing of the books on the 1st day of May in each year the assessed valuation of any real property "as in its judgment may be just or necessary for the equalization of taxation"; and section 906 provides that a certiorari to review or correct on the merits any final determination of the board of taxes and assessments shall be allowed by the Supreme Court, or any justice thereof, on the verified petition of the party aggrieved, only on the grounds, which must be specified in such petition, that the assessment is illegal, "or, in case of real estate, that the same is erroneous by reason of inequality, in that the assessment has been made at a higher proportionate valuation than the assessment of other real estate on the tax rolls of the city for the same year, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby." The change in phraseology between this provision of the charter and the provisions of the tax law to which attention has been called is not, I think, material; and under the charter, to justify the court in reducing an assessment for inequality, the burden is on the relator to show that the assessment has been made at a higher proportionate valuation than the assessment of the other real estate on the tax rolls of the city for the same year, and the extent thereof, and that the relator is or will be injured thereby.

This necessarily involves an inquiry as to the general ratio of the assessments for the particular borough in which the property is situated, and based upon which the tax for that particular borough was imposed. Where a particular piece of property is not assessed at a greater value than its fair market value, the owner is not injured unless he can make it appear that the valuation placed upon his property is in excess of that at which the other real property in the same taxable district is assessed. If all the real property in a particular taxable district is assessed at 100, or 75, or 50 per cent. of its real value, the tax is imposed upon all property equally; and while the ratio would be higher at the lower valuation, the amount of tax to be collected being the same, the proportion that each piece of property would have to bear to the total amount to be raised by taxation is the same, and there is no inequality. If, however, a piece of property is assessed at a greater proportion of its market value than the other real property in the same taxing district is assessed, there is imposed upon that property a larger proportion of the burden of taxation than is borne by property generally, and the owner of the particular piece of property is injured by this inequality of assessment.

To entitle the owner of property to relief, he must show that his property has been assessed at a higher proportionate value than other real estate on the tax rolls of the city generally for the same year, and he is also required to specify the instances in which such inequality

exists and the extent thereof. It could not have been intended to require a relator to show the ratio between actual and assessed value of every piece of property in the particular taxing district in which his property is situated to entitle him to relief, as that would be manifestly impossible. The statute requires that he specify the instances in which the inequality exists, and the extent thereof; and this requirement is, I think, fairly met when there is evidence from which it can be found that, taking this particular taxing district as a whole, the relator's property has been assessed at a greater value than real estate in the city generally has been assessed; and when this fact is established, it is not met by the taxing authorities specifying several pieces of property which have been assessed at a higher ratio than the relator's property, any more than it would justify a finding of inequality for the relator to select a few specific pieces of property that have been assessed at a less proportionate valuation than his property. The crucial question is whether the relator's property has been assessed at a higher proportionate value than the other real property on the tax rolls of the city has been assessed for the same year; and that higher proportionate valuations can only be established by showing generally that real property in the taxing district as a whole has been assessed at a ratio to its market value, and that the assessment value of the relator's property in relation to its market value was higher than the established ratio for the city.

We now come back to the question as to the finding of the referee that the established ratio of assessed to market value for the city, taken as a whole, does not exceed 55 per cent. If it does, it follows necessarily that the relators were entitled to have the assessment upon their premises reduced to that percentage of its actual value; for in that way only can the relators be relieved from paying a greater proportion of the aggregate tax than is paid by the other owners of property, taken as a whole. The evidence taken before the referee is very voluminous. There was evidence showing the sales of many pieces of property throughout the city, with the consideration named in the conveyances, and this was compared with the assessed value of each particular piece of property sold. Assuming that the consideration stated in these conveyances was the actual price at which the property was sold, this would furnish a satisfactory basis for determining the actual ratio between the market value and the assessed value of these particular pieces of property; and it does not seem to be disputed but that generally conveyances of this kind, when they express an actual consideration, and not a nominal one, state the actual price at which the property was sold. At any rate, the price is not understated. It would appear that these pieces of property are fairly representative of all the property in the city, and this evidence furnishes material for determining the actual ratio between the assessed and market value of property in the city generally. The actual price at which a piece of property is sold is much more satisfactory evidence of its value than the estimate of experts. An examination of the ratio between actual sales and the assessed value of property sold bears out, I think, the finding of the referee as to the existing ratio between assessed and market values, and there is also other evidence scattered through this record that

tends to sustain his conclusion. No. 130 Broadway, one of the pieces of property involved, was assessed for the year 1898 at $145,000. For the year 1899 this assessment was raised to $300,000, thus more than doubling the assessed value of the property; and in the following year, at an auction sale at which there was a large attendance and fair competition, the property sold for $300,000. The facts substantially agree that the property had increased in value during the year 1899. The referee has found that the fair value of this property on the second Monday of January, 1899, was $250,000, and this finding is sustained by the evidence. Assuming that the property had increased in value 20 per cent., as testified to by one of the witnesses for the defendants, during that year, and assuming that $300,000 was the fair market value of the property when it was sold in 1900, it would make the value of the property on the 1st of January, 1899, $250,000; $145,000, at which it was assessed in the year 1898, would be between 56 and 57 per cent. of its value. There is no evidence that the value of the property increased during the year 1898. There is much other evidence in relation to specific pieces of property in this locality which tended to show that the assessed value of property of this character in this locality was not above 50 per cent.

A further consideration of this testimony is hardly necessary, as I am satisfied that, considering the peculiar conditions here shown to exist, the finding of the referee was fairly sustained, and the court below was justified in accepting it, and in basing its final order upon these conclusions.

It follows that the order appealed from should be affirmed, with costs and disbursements. All concur.