the extent of her injuries and respecting the accident, and voluntarily, in the presence of her husband, she consented to receive $325 in settlement of her claim. The fact that the defendant's agent told her that it would pay no more cannot, as it seems to me, be a basis for a recovery by her; neither is the fact available to her that McCormick falsely stated to the defendant that he had paid her $1,875, and thus obtained $1,550 from the defendant, which he applied to his own use. Suppose, as is suggested in the brief of respondent's counsel, that McCormick had been authorized to purchase land of A., and to pay for it up to $5,000, and by statements to the owner that the defendant would not pay more than $4,000 he succeeded in getting the land for that sum; could it be said that the seller could recover of the defendant the difference or any other sum? We think not, and we think that in such case A.'s claim against the defendant would not be strengthened by the fact that the defendant's agent by fraud practiced upon it induced it to pay $5,000, the maximum price, in such manner as that such dishonest agent could obtain $1,000 for his own use, the difference between the actual amount paid for the purchase of the land and the maximum amount which such agent was authorized to pay.

Upon all the facts proven by the plaintiff, it is concluded that no actionable fraud was committed by the defendant, and that every statement made by McCormick was of an opinion, or of an immaterial fact.

I think the judgment of nonsuit should be affirmed.

Judgment affirmed, with costs. All concur, except WILLIAMS, J., who dissents, upon the authority of Duquette v. N. Y. C. & H. R. R. Co., 137 App. Div. 412, 121 N. Y. Supp. 876.

---

PEOPLE ex rel. HUDSON & M. R. CO. v. STATE BOARD OF TAX COM'RS et al.

(Supreme Court, Appellate Division, Third Department.    January 4, 1911.)

1. TAXATION (§ 319*)—REVIEW OF ASSESSMENT—EVIDENCE—PRESUMPTION AND BURDEN OF PROOF.

   A party assailing an assessment must prove that the method of assessment was incorrect, and does not represent the fair value of the property assessed; the presumption being that a valuation of property, as the relator's special franchise, fixed by the State Board of Tax Commissioners, is correct.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 527–534; Dec. Dig. § 319;* Evidence, Cent. Dig. § 105.]

2. TAXATION (§ 496*)—MODE OF ASSESSMENT IN GENERAL—STATUTES—VALUATION—GROUNDS OF VALUATION.

   Where the return to a writ of certiorari to review an assessment by the State Board of Tax Commissioners does not set forth the grounds for the valuation made by them, as required by section 252 of the tax law (Consol. Laws, c. 60, § 292), relator's remedy is to require an amended or additional return, which shall comply with the requirements of law.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 904; Dec. Dig. § 496.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. TAXATION (§ 117*)—CORPORATE FRANCHISE—COMPLETION OF RAILROAD.
  A special franchise of a railroad company may be assessed for taxation, although its road is not completed and in actual operation, so as to earn revenue.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig. § 117.*]

4. TAXATION (§ 496*)—VALUATION OF FRANCHISE—SPECIAL FRANCHISE—EVIDENCE.
  On appeal from an order in certiorari proceedings reducing an assessment made by the State Board of Tax Commissioners upon a special franchise, evidence *held* insufficient to sustain the order or to show that the assessment was greater than the property's actual value.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 909; Dec. Dig. § 496.*]

5. TAXATION (§ 117*)—SPECIAL FRANCHISE—USE OF PROPERTY.
  The liability of a special franchise to taxation depends upon its cost and the uses to which the tangible property is to be put, and a special franchise to build and operate a tunnel under the Hudson river is taxable, though the tunnel company has a grant from the state of a right of way under the waters of the river to operate a railroad.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 214; Dec. Dig. § 117.*]

6. TAXATION (§ 376*)—SPECIAL FRANCHISE TAX—ASSESSMENT.
  In the assessment of a special franchise, the cost and assessment of other property not of like nature in itself or in its business uses are not competent evidence.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 629–631; Dec. Dig. § 376.*]

7. TAXATION (§ 496*)—ASSESSMENT—EQUALIZATION ON CERTIORARI.
  Where the State Tax Board has assessed a corporation's special franchise at its full value, and other real property in the same municipality is assessed on 89 per cent. of its value, the valuation of the company's property should, on certiorari, be reduced accordingly, so that it will stand on an equality with other property.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 908; Dec. Dig. § 496.*]

  Smith, P. J., dissenting.

Appeal from Special Term, Albany County.

Proceeding by the People, on the relation of the Hudson & Manhattan Railroad Company, against the State Board of Tax Commissioners, in which the City of New York intervened. From an order of the Special Term of the Supreme Court reducing the special franchise tax of the relator for the year 1908, and confirming the assessment as reduced, the relator and the City of New York appeal. Order reversed upon the law and the facts, and the determination of the Tax Board modified, and, as modified, confirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Stetson, Jennings & Russell (Lewis E. Carr and Frederic B. Jennings, of counsel), for relator.

Archibald R. Watson, Corp. Counsel (Curtis A. Peters and Addison B. Scoville, of counsel), for City of New York.

Edward R. O'Malley, Atty. Gen., for State Board of Tax Com'rs.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JOHN M. KELLOGG, J.  "In the consideration of this case we are bound to assume at the outset that the valuation of the relator's special franchise as fixed by the State Board of Tax Commissioners was correct. 'It is essential that a party assailing the validity of an assessment should make it conclusively appear that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed.'"    People ex rel. Jamaica W. S. Co. v. Tax Com'rs, 196 N. Y. 39, 53, 89 N. E. 581, 585.

Section 252 (now 292) of the tax law (Consol. Laws, c. 60) requires the return to set forth the grounds for the valuation made by the assessing officers.  The return in this case does not really set forth any grounds, and upon that subject consists mainly of many words.  But that does not authorize the court to act as an assessing body, and does not bring any benefit to those questioning the assessment.  It is difficult to determine that a tax is based upon erroneous grounds when the grounds upon which it is based do not appear. The relator had ample remedy by requiring an amended or additional return which should comply with the requirements of the law.  People ex rel. Buffalo Gas Co. v. Tax Com'rs, 199 N. Y. 162, 92 N. E. 215; People ex rel. Lehigh Valley R. R. Co. v. Woodbury, 199 N. Y. 167, 92 N. E. 217.  The relator must therefore stand pretty well within his petition, which assumes that the value of the special franchise is so indefinite and uncertain that it is impossible to be shown.  In other words, that there is no real basis upon which it can be valued and therefore it should be treated as valueless.

The evidence given by the tax commissioners fixes the probable cost of the tangible property at about the amount of the assessment.  The relator shows that the actual cost of the tangible property was less than one-half of the assessed value of the franchise, and claims that only its scrap value, which is merely nominal, should be considered. The fact that the road was not in actual operation as a revenue producer at the time of the assessment does not show that the intangible property has no value.  The relator obtained the franchise, and is spending many millions of dollars in boring the tunnels and building and equipping the railroad with the expectation that it will prove a profitable investment.  It estimates that the whole line will carry 77,000,000 of people in a year, at 5 cents each, with a probability that it may carry 100,000,000, and that the probable cost of operation will be about 40 per cent. of the gross earnings.  This would show that the value of the special franchise within this state, with the road in the condition in which it was at the time of the assessment, would be very much more than the assessed value.  If the road will earn many million dollars next year or the year after, and produce a large net revenue over interest upon the capital actually invested, the intangible part of the franchise is of great value now, although the net earnings rule cannot be applied to fix the value.  The net earnings rule is only one of many ways in which the value of property may be measured.  It will not do to say that a special franchise is not valuable because the road is not completed, and not in actual operation so as

to earn revenue. The fact that millions of dollars are being spent to build and equip a road proves that in its present condition its tangible as well as intangible property has a value. The record does not disclose anything showing that the Tax Board acted upon a wrong basis, or assessed the relator's property at more than its actual value.

Apparently the Pennsylvania tunnel cost much more per mile and is assessed at a lower rate per mile. But it is not a like property. It is built to accommodate and furnish a terminal in New York City for the Pennsylvania Railroad Company's system of several thousand miles of railroad, and in its operation will become substantially a part of that system. The record does not disclose that it is, or is intended to be, in itself a distinct revenue producer. It does not appear that each person riding upon it will pay a fare for that privilege, or whether the Pennsylvania Railroad Company will charge a greater fare to and from New York City than before. The only real value of the terminal may be as an additional convenience to the public and to the Pennsylvania Railroad system, and an advertisement and an indirect benefit to the system of which it is a part. The tangible part of its franchise cost more, but the value of a special franchise depends upon the cost and the uses to which the property is to be put. The relator's business is a separate business, intended as a distinct revenue earner by itself, and its probable revenue and earnings can be more easily estimated.

The other properties, the cost and assessment of which were shown upon the hearing, are not of a like nature in themselves or in their business, and a fair comparison cannot be drawn between them. The fact that the relator has a grant from the state of a right of way under the waters of the Hudson river for operating a railroad does not relieve it from this tax. It appears that the relator was assessed the amount which the Tax Board deemed the full value of its franchise, and that other real property in New York City is assessed only 89 per cent. of value. The relator's property, therefore, should be reduced accordingly, so that it will stand on an equality with the other property.

The order of the Special Term should therefore be reversed upon the law and the facts, and the determination of the Tax Board should be modified by reducing the valuation as indicated, and, as so modified, confirmed, without costs to either party. All concur, except SMITH, P. J., dissenting.