PEOPLE ex rel. HUDSON & MANHATTAN R. CO. v. STATE BOARD OF
TAX COM'RS et al.

(Supreme Court, Appellate Division, First Department.   February 10, 1911.)

1. TAXATION (§ 496*)—ASSESSMENTS—REVIEW—CERTIORARI—RETURN.
    Where the return of the State Board of Tax Commissioners, in certio-
rari to review an assessment of special franchises, does not show the
theory on which the valuation is determined, relator may compel a fur-
ther return disclosing the rule of valuation and the material evidence on
which the commissioners acted.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 904; Dec. Dig.
§ 496.*]

2. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—DETERMINATION.
    Where relator, in certiorari to review an assessment of special fran-
chises, failed to compel a further return by the State Board of Tax Com-
missioners, so as to disclose the rule of valuation and the evidence on
which the commissioners acted, the assessment must be sustained, unless
relator shows on the hearing de novo that it cannot be sustained on any
theory; and where the evidence leaves the matter in doubt, the deter-
mination of the commissioners cannot be disturbed.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 904–908; Dec.
Dig. § 496.*]

3. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—PETITION.
    Where neither the petition on certiorari to review an assessment of
special franchises nor the evidence showed the value of the special fran-
chises, relator could not complain, under Tax Law (Consol. Laws, c. 60)
§§ 290, 293, requiring the petition to specify the extent of the overvalua-
tion and authorizing the court to order a reassessment, etc., that the
franchises were overvalued, except possibly on the theory that they had
no value.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 903–908; Dec.
Dig. § 496.*]

4. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—PRESUMPTION.
    The court, on certiorari to review an assessment of special franchises,
will presume that the State Board of Tax Commissioners assessed the
franchises at their full value, as required by Tax Law (Consol. Laws, c.
60) § 2, subd. 3, section 21, subd. 4, and sections 43, 45, so that, on it ap-
pearing that other real property on the same assessment roll was as-
sessed at only 89 per cent. of its true value, the assessment must be re-
duced to 89 per cent. thereof, to equalize it with the other assessments.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 905, 906, 908;
Dec. Dig. § 496.*]

5. TAXATION (§ 463*)—ASSESSMENT—REVIEW—ESTOPPEL.
    A taxpayer, who misleads the State Board of Tax Commissioners in
assessing special franchises, may not complain of the assessment.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 824–827; Dec.
Dig. § 463.*]

6. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—EVIDENCE.
    An assessment of special franchises will not be reduced on certiorari,
on evidence merely showing that the assessment was at a higher propor-
tionate valuation than a few other assessments on the same roll; but
relator must show that, unless its assessment is reduced, it will pay more
than its proportion of the taxes.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906; Dec. Dig.
§ 496.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—EVIDENCE.

On certiorari to review an assessment of special franchises to construct and operate an underground railroad under the streets of a city, the testimony as to the value per square foot of land on the streets under which the railroad is constructed, and that the easement for a tunnel for a railroad, if under private property, would be worth a specified per cent. of the fee value of the land above the tunnel, was immaterial on the value of the franchises.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906; Dec. Dig. § 496.*]

8. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—EVIDENCE.

Where a corporation, owning special franchises to construct and operate an underground railroad under the streets of the city of New York, failed to furnish to the State Board of Tax Commissioners the information required by Tax Law (Consol. Laws, c. 60) § 44, in certiorari to review the assessment, the cost of reproduction of the tangible property was material evidence in determining the value of the franchises.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906; Dec. Dig. § 496.*]

9. TAXATION (§ 373*)—ASSESSMENT—FRANCHISES—PROCEEDINGS.

The State Board of Tax Commissioners, in assessing special franchises, may obtain and act on information derived from their experts.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 622; Dec. Dig. § 373.*]

10. TAXATION (§ 459*)—ASSESSMENT—REVIEW—GROUNDS.

The mere fact that the value of special franchises to construct and operate an underground railroad under the streets of the city of New York cannot be ascertained with accuracy is not ground for annulling an assessment of the franchises, where the owner urged that the property was overvalued, or valued at a higher proportionate value than that placed on other property on the same roll.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 815; Dec. Dig. § 459.*]

11. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—PETITION.

Under Tax Law (Consol. Laws, c. 60) §§ 290, 293, authorizing a petition complaining of an assessment by reason of overvaluation, and requiring the petition to state the extent of such overvaluation, and authorizing the court to order a reassessment to make it conform to the valuations of other property on the same roll, etc., a petition, on certiorari to review an assessment of special franchises, must state the valuation of the franchises, and set forth the material facts to show a disproportionate valuation, in order to enable the court to determine the questions of overvaluation and of higher proportionate valuation than that placed on other property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 903; Dec. Dig. § 496.*]

12. TAXATION (§ 496*)—ASSESSMENT—REVIEW—CERTIORARI—EVIDENCE.

Where a corporation, on certiorari to review an assessment of its special franchises to operate an underground railroad under the streets of the city of New York, does not show the probable cost of equipment of its lines and the annual operating expenses, with a view to show that the net income, after allowance for depreciation and interest on the investment capitalized, will not equal the assessment, it is not shown that the assessment is unauthorized, either under the net earning rule or on the theory of the cost of reproduction of the tangible property in connection with the value of the intangible property, and the assessment must stand.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906; Dec. Dig. § 496.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. TAXATION (§ 144*)—"SPECIAL FRANCHISE"—"LAND"—"REAL ESTATE"—
"REAL PROPERTY"—UNDERGROUND RAILROAD.

Under Tax Law (Consol. Laws, c. 60) § 2, subd. 3, defining the terms "land," "real estate," and "real property" to include land, underground railroads, including the valuation of franchises to construct and operate the same, and defining a "special franchise" to include the value of the tangible property of a corporation situated in or under or above any street, a corporation owning special franchises to operate an underground railroad under city streets owns special franchises subject to taxation, though only so small a part of the railroad is constructed and in operation as is insufficient to meet operating expenses, taxes, and interest, and the franchises, if possessing a value, are taxable, though they are not used.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 250; Dec. Dig. § 144.*

For other definitions, see Words and Phrases, vol. 5, pp. 3975–3984; vol. 8, pp. 7700, 7701; vol. 7, pp. 5939–5951; vol. 8, pp. 7778, 7779; vol. 7, p. 6576.]

14. COMMERCE (§ 73*)—TAXATION—RAILROADS.

The state may tax a corporation on its special franchises, granted to it by the state, or by authority from the state wholly within its limits, though the corporation is engaged in interstate commerce, because the tax is not on the business of the corporation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 124–134; Dec. Dig. § 73.*]

Ingraham, P. J., and Scott, J., dissenting.

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of the Hudson & Manhattan Railroad Company, against the State Board of Tax Commissioners and the City of New York. From an order confirming an assessment against the relator's special franchises in the borough of Manhattan, New York, for the purpose of taxation for the year 1909, and dismissing the proceeding, relator appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Frederick B. Jennings, for appellant.

Curtis A. Peters, for respondent city of New York.

Wm. N. Cohen and Arthur J. Cohen, for respondent State Board of Tax Com'rs.

LAUGHLIN, J. The petitioner is a corporation duly organized and existing under the laws of the states of New York and New Jersey. It was formed December 1, 1906, by the consolidation of the Hudson & Manhattan Railroad Company and the New York & New Jersey Railroad Company, which were incorporated under the laws of New York, and the Hoboken & Manhattan Railroad Company, which was incorporated under the laws of New Jersey. It succeeded to the ownership of a special franchise granted by the board of rapid transit commissioners on the 10th day of July, 1902, to the New York & New Jersey Railroad Company for the operation of an underground railroad for the transportation of passengers and property

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for hire, consisting of tunnels beginning at the bulkhead of the North River at West street, at a point nearly opposite Morton street, running thence through Morton, Greenwich, and Christopher streets, to a terminal in the block bounded by Christopher, West Tenth, Greenwich, and Hudson streets, as also to a similar special franchise granted by said board to the same company on the 2d day of February, 1905, for an extension of the line under Sixth avenue to Thirty-Third street and under Ninth street to Fourth avenue; and it also succeeded to the ownership of a special franchise granted by said board on the 24th day of November, 1903, to the Hudson & Manhattan Railroad Company for constructing, maintaining, and operating certain other tunnels under streets in the borough of Manhattan, New York, beginning at a point in the Hudson river on the boundary line between the states of New York and New Jersey, opposite the foot of Cortlandt street, thence easterly under the river and bulkhead to West street, and running under West, Cortlandt, Church, and Fulton streets and under the Hudson river to a point in the said boundary line opposite Fulton street. It is alleged, and not denied, that the petitioner also succeeded to the right, title, and interest of the Hudson Tunnel Railway Company under certain letters patent granted to it by the state of New York on the 24th day of February, 1891, being a grant from the people of the state as the owners of the land under the Hudson river to the boundary line between New York and New Jersey, for the construction of the upper tunnels from the bulkhead line opposite the foot of Morton Street to said boundary line.

Prior to the 15th day of March, 1909, the State Board of Tax Commissioners fixed and determined the value of all of this property, including the tangible property installed in the construction of the railroads, as special franchises for the purposes of taxation in the year 1909 at $8,000,000, and gave due notice to the relator of a hearing to determine any complaint it might desire to make concerning said assessment. Pursuant to such notice the relator, by its president and counsel, appeared before the board and protested against the assessment, claiming that it was excessive, illegal, and erroneous, and filed objections in writing to the assessment, and offered to answer any inquiries that the board might make, but none were made. The objections were based in part on the annual report made to the Board of Tax Commissioners by the petitioner pursuant to law on the 30th day of January, 1909. That report showed, among other things, that only a small portion of the railroad had been constructed and was in operation, and that the earnings thereof were insufficient to meet the operating expenses, taxes, and interest; that the remaining parts of the tunnel and railroad were in an inchoate, incomplete condition. For these reasons the objections showed that the relator claimed that the special franchises had no value for the purposes of taxation in excess of the rents reserved to the city thereunder, and that until the railroads were fully completed it would be impossible to estimate what they would be worth, for until then there could be no definite knowledge of their earning capacity. The relator also objected on

the ground that the assessment cannot be justified on the basis of the cost of the tangible property, for the reason that it is not assessed as such, but only as forming a part of the special franchises, and only to the extent to which the special franchises including it have an actual value based on its earning capacity, and even if the tangible property be taxed apart from the value of the special franchise itself, the assessment greatly exceeds its value, and that in fact the tangible property at that time had no value, or if its value were to be fixed on the value of the cost of reproduction, that would be only $3,950,000, as shown by said annual report. The objections further charged generally that the assessment is unequal and excessive, and at a higher proportionate valuation than the assessments of other special franchises and real estate in the city of New York, and a comparison between this assessment and assessments against the New York & Harlem Railroad Company, the Manhattan Elevated Railroad Company, the Interborough Subway Company, and the Third Avenue Railroad Company was made in the objections, apparently with a view to showing that the assessment per mile of trackage of the relator was much greater than on said other corporations. The objections also challenge the validity of the assessment on the ground that the business of the relator was interstate commerce, and that therefore the board was without jurisdiction to tax its special franchises, which were used and intended to be used in conducting interstate traffic. Further objections were made to the assessment on the ground that the tunnels and railroad constructed or to be constructed between the Manhattan bulkhead line of the river opposite Morton street and the boundary line between the states was not a special franchise, for the reason that said tunnels and railroad were constructed or to be constructed on land owned by the relator by virtue of said letters patent, and the tunnel and railroad, therefore, were real property, assessable and assessed as such by the local authorities. The final objection to the assessment was that a certain bridge constructed over Dey street pursuant to a revocable permit of the board of estimate and apportionment of the city of New York connecting the two terminal buildings of the relator erected upon private premises, for the convenience of the tenants of the buildings in passing from one to the other and reaching the elevated railroad in Church street adjacent thereto, was included in the assessment, but was not assessable, for the reason that it formed no part of the relator's railroad, and was not constructed and is not maintained under or by virtue of any special franchise from the state, and that the revocable right to maintain the bridge had no value over and above the rental reserved to the municipality by the license.

The petition for the writ sets forth these facts, and further shows that the board did not notify it to appear for any other examination or hearing; that, as petitioner was informed and believed, the board had no other evidence or information before it, and that no other evidence was known to or considered by the board; that the evidence presented by the petition was uncontroverted, and was accepted as

sufficient by the board. Neither the sources of information nor the grounds of belief of the petitioner with respect to these matters are stated, and therefore the allegations are of no probative force. It appears that after the hearing the state board fixed the value of the property herein described as special franchises at $8,000,000, and filed with the department of taxes and assessments of the city of New York a written statement thereof, duly certified. That valuation has been duly entered on the assessment roll of the city of New York as the valuation of the property for the purposes of taxation as special franchises, and the statutory steps required for the collection and enforcement of taxes against the relator, based on said assessed valuation, were being taken when this proceeding was commenced. The petition further shows that by the grants of said franchises by the board of rapid transit commissioners of the city of New York the method of fixing the valuation of said franchises was determined, for the purpose of ascertaining the annual rental or compensation to be made to the city therefor, and said grants are referred to and made a part of the petition, and it is therein stated that copies thereof were filed with the State Board of Tax Commissioners by the petitioner with its said annual report. It is further shown in the petition that the petitioner was assessed by the commissioners of taxes and assessments of the city of New York for the same property for the same year at an assessed valuation of $1,700,000.

The return to the writ denies that the assessment is either illegal or unequal, and shows that the board made no separate valuation of the tangible and intangible property; that the valuation of the special franchises was made in gross and as a whole, "including both the value of the intangible right and privilege to use the streets, highways, or public places for its purpose for which the special franchise was granted, and the value of the tangible property located therein and used in connection therewith, considered together"; and the return contained a denial of each and every other allegation contained in the petition, excepting "in so far as the same are shown to be true by this return." The information and evidence upon which the board based the valuation are stated in the return as follows:

"That the facts pertinent and material to show that the value of the property assessed on the roll, which were considered by said State Board of Tax Commissioners, and the ground for the valuation of such special franchise by them, were examination, investigation, and inquiry by and on behalf of said board, and such other facts as are contained in the annual report of the relator for the year 1908, the objections, evidence, and oral arguments presented by the relator on the day set for a hearing by said State Board of Tax Commissioners, pursuant to statute, the reports of local assessors or other officers of the village, town, or city in which said special franchises are situate, the reports made to said board of its agents, experts, or other investigators, and all the papers and documents, for the said year and previous years, filed by the relator, all of which reports, documents, papers, and records are on file in the office of the State Board of Tax Commissioners, and are hereby incorporated into and made a part of this return by reference, as if herein at length set forth."

Its return does not show the theory upon which or the modus operandi by which the board determined the valuation. The peti-

tioner might have obtained a further return, which would have disclosed the rule of valuation applied in making this assessment and the material evidence on which they acted. People ex rel. Jamaica Water Supply Co. v. State Board of Tax Commissioners, 196 N. Y. 39, 89 N. E. 581; People ex rel. Buffalo Gas Company v. State Board of Tax Commissioners, 199 N. Y. 162, 92 N. E. 215; People ex rel. Lehigh Valley R. R. Co. v. Woodbury, 199 N. Y. 167, 92 N. E. 217; People ex rel. N. Y. Ontario & Western R. R. Co. v. State Board of Tax Commissioners, 132 App. Div. 604, 117 N. Y. Supp. 81. Had this been done, the evidence on the review of the assessment by certiorari would be directed to that theory, and it would not be so difficult to determine whether or not the assessment is illegal or excessive.

It is not only to be presumed that the assessment is valid, but it must be sustained, unless the relator has shown on the hearing de novo, which it was entitled to and has had in this proceeding (People ex rel. Manhattan Ry. Co. v. Barker, 152 N. Y. 417, 46 N. E. 875), that it cannot be sustained on any theory or rule of valuation which the assessors might lawfully have adopted or applied; and, if the evidence leaves the matter in doubt, then it is the province of the assessing officers to determine the value and their determination cannot be disturbed (People ex rel. Jamaica Water Supply Co. v. State Board of Tax Com'rs, supra; Burke v. Wells, 184 N. Y. 279, 77 N. E. 19; People ex rel. Osgood v. Tax Com'rs, 99 N. Y. 154, 1 N. E. 401).

Neither the petition nor the evidence in the case at bar shows the value of these special franchises, and therefore there is no basis for complaint that they are overvalued (see Tax Law [Consol. Laws, c. 60] §§ 290, 293), except, possibly, on the theory that it is to be inferred from the facts set forth that they had no value, and that is scarcely claimed, for the relator's theory is that the value cannot be ascertained. It is, however, to be presumed that the Board of Tax Commissioners performed their statutory duty in assessing the special franchises at their full value. Sections 43, 45, subd. 4, of section 21, and subdivision 3 of section 2, Tax Law. It was shown upon the hearing that the other real property on the same assessment roll assessed by the commissioners of taxes and assessments of the city of New York was assessed at only 89 per cent. of its true value. It would seem, therefore, that in any event the petitioner is entitled to have the assessment reduced to 89 per cent. thereof, in order to equalize it with the other assessments. People ex rel. Jamaica Water Supply Co. v. State Board, supra.

As has been seen, the relator contends that, in so far as this property constitutes special franchises, it is not taxable, for the reason that it had no taxable value on the second Monday of January, 1909, as of which day this assessment was made, and the claim is also made that the property derived from the state under the letters patent does not constitute any part of the special franchises. It appears that the property was all assessed together on a single valuation, and therefore, if the relator's contention that it is not assessable for the prop-

erty covered by the letters patent should be sustained, it would be necessary to annul the assessment.   Section 2 of the tax law, so far as material to the questions presented for decision, is as follows: ·

"The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under the water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same,  *  *  *  all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, or through streets, highways or public places; all railroad structures, substructures and superstructures, tracks and the iron thereon; branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground.  *  *  *  A franchise, right, authority or permission specified in this subdivision shall for the purposes of taxation be known as a 'special franchise.'  A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise.   The tangible property so included shall be taxed as a part of the special franchise.   No property of a municipal corporation shall be subject to a special franchise tax."

On  the hearing at Special Term it was shown that the permit to construct the bridge over Dey street was granted on the 26th day of June, 1907, and is revocable on 60 days' notice.   While it stands the relator is required to pay the city a fixed annual charge for the privilege of maintaining it.   This was years after the special franchises to construct the tunnels were granted, and it has no direct connection therewith, and cannot, we think, fairly be said to be any part of the special franchises.   It does not clearly appear, however, that the bridge was considered by the State Board of Tax Commissioners as part of the special franchises.   A paper, referred to by counsel for the relator as the "tentative assessment roll," made by the State Board of Tax Commissioners for the year 1909, shows in columns a description of the property of the relator, the last two items of which are as follows:

"Tunnel Crossing Dey Street.
"Bridge    "    "    "    ."

Printed at the head of this column is the following: "Description of property by corporation"—which would seem to indicate that the description below in the column is the one given by the corporation itself in reporting its special franchises to the board pursuant to the requirements of section 44 of the tax law.   If the relator thus itself misled the taxing officer, surely it cannot be heard to complain.   Moreover, it is highly improbable that the assessed valuation was increased on account of the permit to maintain the bridge.   Therefore we deem that objection without merit.

On the hearing the president of the relator testified that on the 31st day of December, 1908, its uptown line was completed from Hoboken under the river to Morton street, and under Greenwich and Christopher streets and Sixth avenue to Twenty-Seventh street, and that it was in operation as far as Twenty-Third street; that its uptown franchise at that time extended as far as Thirty-Third street, and was projected beyond that under Sixth avenue to Forty-Second street, and

through Forty-Second street to Park avenue at the Grand Central Station, but that it did not obtain its franchise for this extension until May, 1909; that at the end of the year 1908 the downtown line was in process of construction; that the two tunnels had been partly constructed from the Manhattan side toward the middle of the river, and from the middle of the river toward the east, leaving a gap, however, in each, and that the lower subway on Manhattan Island had in part been constructed, but no cars were running on the downtown line; that the company commenced to carry passengers on the uptown line from Hoboken to Nineteenth street on the 26th day of February, 1908, and as far as Twenty-Third street a few months later; that the gross passenger receipts for that year on the entire line in New York and New Jersey were only $529,288.40; that the operating expenses for that year, not including taxes or any part of the fixed charges, were $494,147.31, leaving $35,141.09 of net earnings, against which would have to be charged interest on funded debt and taxes; and that it paid the city by virtue of contracts contained in the special franchises $24,045.52. The relator also showed, by the testimony of its chief engineer, the precise condition of construction at the end of the year 1908, which it is not deemed necessary to state, further than as already stated; that the whole total mileage of single-track railroad to be constructed in the state of New York under the franchises in question was 7.32 miles, of which the equivalent of 5⅛ miles was completed in 1908; that the total mileage of single track which it was authorized to construct in New Jersey was 18.90 miles, and that the assessment of $8,000,000 on the relator's special franchises is the equivalent of $1,561,380 per mile on its completed single trackage in this state. These engineers also gave evidence showing the comparison in diameter and cost of construction of the relator's tunnel with the tunnels of the Pennsylvania Railroad, the assessment per lineal mile of single track on the special franchises of the New York Subway, the New York & Harlem Railroad, the New York Central & Hudson River Railroad, the Third Avenue Railroad, and the Second Avenue Railroad. No evidence, however, was presented with respect to the value of the special franchises of said other lines.

If the assessment were on the tangible property only, it might be said that the evidence presented by the relator tends to show that the assessed valuation of its tangible property is probably at a higher proportionate valuation than that on those of the Pennsylvania Railroad Company and the New York Subway; but neither the value nor the terms of the other special franchises is shown, and the evidence, therefore, is of little value. Moreover, if it could be determined from the evidence exactly the proportion, if any, that the special franchises of the relator are assessed above a few others, it is evident that it would not do to reduce the assessment on evidence merely showing that it was at a higher proportionate valuation than a few other assessments on the same roll; for, in order to show that the relator is aggrieved, it would be necessary to show that, unless its assessment was reduced, it would be obliged to pay more than its proportion of the taxes. People ex rel. Warren v. Carter, 109 N. Y. 576, 17 N. E. 222; People

ex rel. Fiske v. Feitner, 95 App. Div. 217, 88 N. Y. Supp. 694, affirmed 180 N. Y. 536, 72 N. E. 1148; People ex rel. Stewart v. Feitner, 95 App. Div. 481, 88 N. Y. Supp. 774. The assessments with which the relator makes comparison were not selected by both parties as representative of all the assessments, and it was not assumed on the trial that they were, as was the case in People ex rel. Eckerson v. Christie, 115 N. Y. 158, 21 N. E. 1024.

The relator also called a real estate expert, who gave his opinion as to the value per square foot of land on the streets under which the relator's railroad is constructed at different points. He then testified that in his opinion an easement for a tunnel such as that of the relator, if under private property, would be worth from 15 to 25 per cent. of the fee value of the land above the tunnel. We are at a loss to see how this evidence has any material bearing on the questions presented for decision.

The annual report of the relator made to the State Board of Tax Commissioners for the year ending December 31, 1908, was offered and received in evidence. It appears by that report that the relator was required by the blanks furnished by the State Board of Tax Commissioners to state, among other things, the "present value of property in streets, highways, public places, and public waters, on basis of cost of reproduction new," and the present value thereof, allowing for depreciation, and also the cost of construction and the cost of equipment. The relator, in answer to these requests, stated that the tunnels, railroads, stations, and terminals were in course of construction and equipment under construction contracts made by the constituent companies to whose rights the relator succeeded; that the railroads were not completed or in operation, "with the exception of a comparatively small part of the said railroad between Hoboken, N. J., and Sixth avenue and Twenty-Third street," and that "this situation precludes simple numerical answers to some of the questions in this printed form"; that "it is impossible to state the cost of the road and equipment, inasmuch as the work has not yet been completed"; that the work done and property acquired have been done and acquired pursuant to construction contracts, "which call for a total consideration in bonds and stock for complete construction and equipment." There was annexed to this report an affidavit of one of the chief engineers of the relator, giving the cost of reproducing the tangible property under the river in the uptown tunnel, less a specified allowance for depreciation, as $797,401, and the cost of reproducing the tangible property in the uptown line under the streets between the bulkheads and Twenty-Seventh street, less a specified allowance for depreciation, as $2,626,816, and stating that the cost of reproducing the tangible property in the downtown lines would be $1,323,170. According to this affidavit, the total cost of reproduction of the tangible property, less a proper allowance for depreciation, would have been $4,747,387. The grants of the special franchise which were before the State Board of Tax Commissioners were offered in evidence by the relator. They show that the city is to receive compensation agreed upon on a specified basis for vault space and linear feet of tunnel and subway, and

that the relator is to pay the city, in addition thereto, annually, 3 per cent. of its gross earnings for 10 years, and 5 per cent. thereafter, and the gross earnings for the mileage in New York were therein estimated at $3,000,000 per annum under each of said three franchises for 25 years, except Sixth avenue, which was to be estimated anew after 10 years by agreement or arbitration. The relator agreed to pay the city in all annually for the use of the franchises about $48,000.

The said annual report of the relator also showed an authorized stock of $50,000,000, of which $15,211,508.38 was issued and outstanding in the hands of the public, and $28,535,116.62 was issued or to be issued to the contractor for construction and equipment; that there were outstanding $5,000,000 bonds issued by one of the constituent companies "affecting part of the property"; and that the relator had mortgaged all of its property to secure a bond issue of $100,000,000, of which $51,500,000 had been issued and were outstanding. No other evidence was offered by the relator bearing on the question of the value of the special franchises.

On behalf of the respondent, an experienced civil engineer, who had charge, in part, of the construction of the Pennsylvania Railroad tunnels and the Belmont tunnel, and who for some time had been and was then employed as the engineer of the State Board of Tax Commissioners, testified that the State Board valued the tangible property of the relator as of the 2d day of January, 1909, at $7,642,322, which was based on the cost of reproduction new; that he was familiar with the cost of such work, and familiar with the condition of the work at that time, and in his opinion those were conservative figures; and that he made that estimate for the board. The relator did not see fit to call its engineers to contradict this testimony, and to subject them to cross-examination with respect to the cost of reproduction of its tangible property. In these circumstances, it cannot fairly be said that the cost of reproduction of such property would not be as much as the figures stated by the engineer of the State Board of Tax Commissioners. If they were authorized to arrive at the valuation on that theory, that would leave only $357,678 of the assessment for the valuation of the special franchises themselves over and above the valuation of the tangible property in connection therewith.

The rule is well established that property should not be assessed for more than its full and true value, and if it be held and used for specific purposes in connection with other property not within the jurisdiction of the assessing officers, as a parcel of real estate forming part of a railroad company's right of way, at what it would cost to reproduce it, for it cannot fairly be said to be worth more than it would cost to duplicate it. People ex rel. D., L. & W. R. R. Co. v. Clapp, 152 N. Y. 490, 46 N. E. 842, 39 L. R. A. 237. See, also, People ex rel. W. U. Tel. Co. v. Dolan et al., 126 N. Y. 166–175–177, 27 N. E. 269, 12 L. R. A. 251. It does not follow that the cost of duplicating or reproducing property may be taken as the valuation for assessment in all cases, even though there may be no readily ascertainable market value for the purpose for which it is used by legislative au-

thority.  It is manifest that such basis would in some instances be erroneous, as where, for instance, an improvement has cost more than those the improvement required should or would have cost.  In the case at bar, while the cost of reproduction of the tangible property may not be controlling as to its value in connection with the tangible property, yet in the absence of other evidence, owing to the inability or unwillingness on the part of the relator to furnish it, as required by the State Board of Tax Commissioners, pursuant to the provisions of section 44 of the tax law, we are of opinion that it is material evidence in determining the value of the special franchises.

The stock and bond issue of this company and its agreement with respect to the annual rentals to be paid to the city show beyond question that the capitalists who financed this enterprise confidently believed that it would be a great financial success.  There is no evidence as to the market value of the bonds and stock.  The actual value of the special franchises, which include the tangible and intangible property taken together, cannot be determined from this evidence, either on the theory that it may be computed from the market value of the bonds and stock (see State Railroad Tax Cases, 92 U. S. 575, 602, 603, 604, 23 L. Ed. 663; also People ex rel. Q. C. Water Co. v. Woodbury, 67 Misc. Rep. 490, 123 N. Y. Supp. 599), for such market value is not shown, nor is the value of its other tangible property shown; nor can it be determined on the theory that it may be ascertained by capitalizing the net income remaining after deducting from the gross earnings estimated in the special franchise agreements, a proper allowance for depreciation and operating expenses, and a fair and reasonable return on the investment for that part of the capital invested in the other tangible property, being the net earnings rule, so-called (People ex rel. Jamaica W. S. Co. v. State Board of Tax Com'rs, supra), for the reason that we are not even given the benefit of an estimate as to what those deductions should be.  The State Board of Tax Commissioners were authorized to obtain and act on information derived from their engineer or other experts.  People ex rel. O. & W. R. Co. v. State Board of Tax Com'rs, supra.  See, also, People ex rel. Manhattan Ry. Co. v. Barker, 152 N. Y. 417, 46 N. E. 875; and since they might have obtained other material evidence and information, it must be presumed that they did so, as stated in their return.  It cannot be said now, when the tunnels have been successfully constructed, without, so far as the record discloses, any extra expenses which were not anticipated, that the special franchises have no value, and will have none unless shown to be valuable by the net receipts from the operation of the railroads after their construction is completed.  It has not been shown that there is any reason to doubt that the gross receipts from the operation of the lines will be as large as estimated in the special grants.  Those gross receipts indicate a very large business, and there is no reason, so far as appears, to doubt that the expectations of the investors will be realized.  It is not probable that financiers would risk such a large investment unless they had reason to believe that it would earn a rate of interest equal to or greater than the

,legal rate. It is a reasonable inference that this large amount of money would not be invested in worthless franchises.

The petitioner does not claim that the franchises are without value. It merely claims that their value cannot now be ascertained. In the circumstances, it is a fair inference that they are worth more than the amount economically expended for the tangible property essential to their use and enjoyment or the cost of reproducing it. The mere fact that their value cannot be ascertained with accuracy is not a ground for vacating or annulling the assessment, where it is claimed that property is overvalued for the purposes of taxation, or that it is valued at a higher proportionate valuation than that placed on other property on the same roll. The valuation should be stated in the petition, and shown, as should the material facts to show a disproportionate valuation, in order to enable the court to determine the questions presented for decision. Tax Law, §§ 290, 293; People ex rel. Mills v. Purdy (App. Div., 1st Dept., June, 1910) 124 N. Y. Supp. 1125. The relator has not attempted to show the probable cost of equipment of the lines and the annual expenses of operating, with a view to showing that the net income, after allowance for depreciation and interest on the investment capitalized, would not equal this assessment. It has not been shown, therefore, that the assessment is not authorized, either under the net earnings rule (People ex rel. Jamaica Water Supply Co. v. State Board of Com'rs, supra), or on the theory of the cost of reproduction of the tangible property in connection with the value of the intangible property.

We are of opinion that the objection that the special franchises are not tangible until the lines are completed and in operation is untenable. If they have a value, they are taxable, even though they be not used; for this statute does not limit their taxation to the period of their use. People ex rel. Jamaica, etc., v. State Board, supra. In the case at bar there is no evidence that the relator obtained the franchises in bad faith; but, on the other hand, it was not shown that it has proceeded with all reasonable diligence to exercise the privileges conferred by the special franchises, and, for aught that appears by this record, it might have completed its lines before the second Monday of January, 1909. The case, therefore, does not necessarily present for decision the question as to whether such special franchises may be taxed between the time they are acquired and the lapse of a reasonable time to enable the holder thereof to prepare for transacting business.

There is no force in the objection that the state cannot tax the relator on the special franchises granted by it or by authority from it wholly within the state, because the relator is engaged in interstate commerce, for the obvious reason that the tax is not on the business of the relator. Postal Telegraph & Cable Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311. See, also, People ex rel. P. R. R. Co. v. Wemple, 138 N. Y. 1, 33 N. E. 720, 19 L. R. A. 694.

The state, by letters patent issued on the 24th day of February, 1891, duly authorized by the Commissioners of the Land Office, granted to the Hudson Tunnel Railway Company "a right of way one

hundred sixty feet in width and forty feet in height within which to construct four tunnels for the use and operation of the railway of said company beneath the waters of the Hudson river," upon and along the route of said railway between "the city of New York and the city of Jersey City," as shown on a plan and profile filed in the office of the Secretary of State, to which reference is made. The relator has succeeded to all of the rights of the Hudson Tunnel Company under said letters patent, and it has constructed the tunnels on the route and precisely in the place described therein. The questions presented on this appeal with respect to the effect of the letters patent and the estate or rights granted thereby are the same as those presented in People ex rel. Bryan et al., as Trustees, v. State Board of Tax Commissioners, 127 N. Y. Supp. 858, argued and to be decided herewith. The decision of these questions on the appeal in that case, from which the writer dissents, requires that the claim of the relator that said tunnels are not assessable as part of its special franchises be overruled.

Since this opinion was written, we have been furnished with a copy of an opinion in People ex rel. Hudson & Manhattan Rd. Company v. State Board of Tax Commissioners and the City of New York, 126 N. Y. Supp. 1063, recently handed down by the Appellate Division in the Third Department on a review of a special franchise assessment on part of these tunnels and subways for the year 1908, and the views therein expressed appear to be in accord with our views as herein expressed.

It follows that 11 per cent. of the assessment should be deducted, in order to equalize the assessments with the assessments in general on the same roll, and, as thus modified, the assessment is confirmed, with costs to appellant. The order should be settled on notice.

MILLER, J., concurs. CLARKE, J., concurs in result.

SCOTT, J. (dissenting). This is an appeal from a final order and judgment confirming the assessment by the State Board of Tax Commissioners of the special franchises of the Hudson & Manhattan Railroad Company for the year 1909. The relator's special franchise was valued at the gross sum of $8,000,000, and the return shows that this included a valuation of both the intangible right or privilege to occupy and use the streets, highways, and public places for the business purposes for which the special franchise was granted, and the value of the tangible property erected or located therein and used in connection therewith, considered together; but the return also shows that the tax commissioners made no separate valuation of the tangible and intangible property. It appears, however, from the evidence adduced by the respondents, that the value of the tangible property was taken at $7,642,322, which was the assumed cost of production. This leaves as the assumed value of the intangible property $357,678, but there is nothing whatever in the whole case from which it can be determined upon what ground or basis this valuation was arrived at, since the respondents have failed to comply with the plain requirement of the statute that they shall include in their return a statement of the

grounds of their valuation. The relator might have compelled a further return complying with the statutes; but, since it has not done so, it became our duty to inquire whether the valuation can be sustained upon any legal basis. The situation and condition of relator's property in January, 1909, as of which time the valuation was made, were peculiar and unusual, and add much to the difficulty of arriving at a just and equitable basis for valuing the special franchises.

The relator was formed on December 1, 1906, by the consolidation of a number of prior existing companies, and succeeded to the special franchises previously granted by the board of rapid transit commissioners to its constituent companies. It was organized for the purpose of constructing and operating a railroad in tunnels under the streets of the city of New York, and the waters of the Hudson river, and in New Jersey, containing in all 26.22 miles of single tunnel. The uptown route consisting of two tunnels, with one track in each, extended in 1909 from Twenty-Third street and Sixth avenue in the city of New York, under Sixth avenue, Christopher street, Greenwich street, Morton street, and the North River to Hoboken, with a branch extending southerly in New Jersey to Jersey City. The downtown route extends from Jersey City, under the North River and Cortlandt and Fulton streets, to a terminal situated upon private property between Cortlandt and Fulton streets, west of Church street. The boundary line between the state of New York and New Jersey runs along the middle of the North river, and consequently no valuation of a special franchise can be made for purposes of taxation, except with respect to so much of the relator's tunnels and property as lies under the streets of New York and under that portion of the North River which is within the state of New York. The feature of the case which presents the most difficult and novel question is that only a part of the relator's system had been completed and put into operation in January, 1909. At that time the uptown tunnels had been completed under the river and as far as Twenty-Seventh street and Sixth avenue, and were in operation as far as Twenty-Third street and Sixth avenue. The tunnels under Fulton and Cortlandt streets of the downtown line had been completed, and the downtown tunnels under the river had been partially, but not wholly, completed, so that it was impossible to operate that part of the system. It will be seen that the relator's system consisted of two lines of tunnels under the river and through the streets of the city, which were not interdependent, and which could be, and in the nature of the case would be, operated independently; for it is not to be supposed that there would be any considerable number of persons who would travel up and down town by way of Hoboken and Jersey City. Of these two independent lines, one was in operation in January, 1909, and the other was not.

The evidence clearly shows that in basing the assessment upon the cost of production the respondents included the cost of the lower, uncompleted, and unusable tunnel structure, as well as the upper structure, which had been recently completed and put in service; and the question at once presents itself whether or not the tax commissioners

were justified in assessing at its cost of production the uncompleted downtown tunnel. The cost of production rule is an easy one to follow, but it is by no means applicable to every case. What the tax commissioners are required to determine is the value of the special franchise, including the tangible and, the intangible elements which the statute provides shall be included in the franchise. It is manifest that, quite independent of cost, the value of the tangible property depends in great measure upon the right and ability to use it in furtherance of and in connection with the exercise of the intangible permission to operate the railroad. This was clearly pointed out by the Court of Appeals with reference to the tangible property in the public streets of a surface railroad company. Speaking of the rails, ties, and the like, the court said:

"They are worth virtually nothing, except for railroad purposes. Separate them from the franchise, by taking away the street privilege, and they are destroyed. Their only value as rails and ties, as distinguished from so much old wood and iron, is gone. Taking the broad and practical view of the subject, which the Legislature had the right to take in creating the new system, they had no assessable value worthy of notice, except through the actual and constant use made of them as incidental to the special franchise. The value of either resides in the union of both, and can be practically ascertained only by treating them as a unit. Unless assessed together, both cannot be adequately assessed." People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 441, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674.

The foregoing observations are entirely applicable to the downtown portion, at least, of relator's system. However costly the tunnels may have been so far as completed, they were practically valueless to relator until they could be used for the purposes for which they were designed. In such a case, as it seems to me, the application of the cost of production rule of assessment must necessarily produce an erroneous and unjust result. A very similar question arose with reference to the valuation of the underground conduits built by the Consolidated Subway Company for carrying electrical conductors. In assessing the value of the capital stock of that company, it became necessary to fix the value of the conduits, and the tax commissioners, adopting the cost of production rule, valued the conduits at their full cost, amounting to something over $5,000,000. It appeared that, up to that time, the company had been able to rent only about 40 per cent. of the number of conduits it had been compelled to build to provide for probable demands in the future, and that as to 60 per cent. of the conduits no income whatever was earned. This court said:

"Ordinarily the cost of property would be a safe guide to follow in determining the value; but the exceptional character of their property, its uses, and the company's inability to rent more than 40 per cent. of its subways, the poor return upon the amount invested, and the present insolvent condition of the company are considerations which cannot be eliminated in determining the value of these subways as real estate. * * * It would be disregarding all the elements which usually go to make up value to say that such property is worth what it cost. Considering, therefore, the peculiar character of such property, the cost of construction is not a fair test of its value." People ex rel. Consolidated, etc., Subway Co. v. Barker, 7 App. Div. 27, 39 N. Y. Supp. 776, affirmed 151 N. Y. 639, 45 N. E. 1133.

Except that the present relator is not insolvent, the foregoing expression of opinion seems to me to apply with great force to the valuation of an important part of relator's system, and as to that part, at least, the cost of production rule seems to me to have been inapplicable. If I am right in the view that the special franchise attached to the unfinished downtown line has not yet acquired a taxable value, it follows that the assessment made by the respondents was erroneous, excessive, and arrived at upon a wrong theory. The erroneous assessment of so large a proportion of the tangible property vitiates necessarily the entire assessment. The record does not contain sufficient data to enable us to determine either the theory upon which a new assessment should proceed, or the amount of such assessment.

The matter should therefore be remitted to the Special Term, to revalue and reassess the special franchise.

INGRAHAM, P. J., concurs.