CITY OF NEW YORK v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. May 7, 1909.)

1. STREET RAILROADS (§ 37*)—PAVING BETWEEN TRACKS—LIABILITY.

Under Railroad Law (Laws 1890, p. 1112, c. 565) § 98, as amended by Laws 1892, p. 1404, c. 676, requiring every street surface railroad company to keep in repair the portion of the street between its tracks and two feet outside under the supervision of the local authorities and when required by them to do so, etc., a street railway company operating under a franchise requiring it to keep in permanent repair the portion of the street between the tracks and two feet outside must repave its part of the street when the pavement as a whole has become so out of repair that a new pavement is necessary and the proper local authorities have determined that the public interests require that a new and improved pavement shall be laid, though the company has maintained the existing pavement in good repair within the railroad area of the street.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 37.*]

2. STREET RAILROADS (§ 37*)—PAVING BETWEEN TRACKS—LIABILITY.

A street railway company required by its franchise and by Railroad Law (Laws 1890, p. 1112, c. 565), § 98, as amended by Laws 1892, p. 1404, c. 676, to keep in repair all portions of the street between its tracks and two feet outside, has no constitutional right to be heard on the question whether the requirement of the proper local authorities to lay a new and improved pavement is reasonable and proper, since the obligation of the company is a mere condition of its use of the streets and as compensation to the city therefor.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 37.*]

3. MUNICIPAL CORPORATIONS (§ 278*)—STREET IMPROVEMENTS—STATUTES.

Under Greater New York Charter (Laws 1897, p. 139, c. 378) § 383, providing that the president of a borough shall have cognizance and control of the paving, repaving, and repairing of all streets, etc., the president of a borough is the proper local authority to determine when and how and under what circumstances a street shall be paved, subject to the control of the board of estimate and apportionment, and, where the board of estimate and apportionment has granted a sum for repaving the streets in the borough, it is within the jurisdiction of the borough president to provide for the repaving of the streets.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 278.*]

Appeal from Trial Term, New York County.

Action by the City of New York against the New York City Railway Company. From a judgment of the Special Term (60 Misc. Rep. 487, 113 N. Y. Supp. 869) in favor of plaintiff, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and CLARKE, JJ.

J. P. Cotton, Jr., for appellant.
Terence Farley, for respondent.

INGRAHAM, J. This action was brought to recover the expense incurred by the plaintiff in laying certain pavements in West Broadway in the city of New York through which a line of street cars was

operated by the defendant. There was no substantial dispute about the facts. Both parties requested the court to direct a verdict, and there was no request to submit any question to the jury.

The Metropolitan Crosstown Railroad Company was authorized to construct, maintain, use, and operate a street railroad through certain streets and avenues in the city of New York, which included South Fifth avenue from Spring street to Fourth street, by a resolution of the common council of the city of New York approved by the mayor on December 31, 1889. This ordinance was adopted upon the condition that the provisions of chapter 252, p. 309, of the Laws of 1884 should be complied with; that the right, franchise, and privilege of using the said streets and avenues to construct, maintain, use, and operate a street surface railroad upon said streets and avenues, subject to all the provisions of chapter 252, p. 309, of the Laws of 1884, and of chapter 642, p. 919, of the Laws of 1886, should be sold at public auction to a railroad company organized to construct, maintain, and operate a street railroad in the city of New York which would agree to give the largest percentage per annum of its gross receipts; that the bidder to which the aforesaid sale should be made—

"shall be absolutely and unqualifiedly bound, and any person or company using or operating a railroad upon the tracks, or any part of the tracks, constructed, upon the said route under or by virtue of the consent hereby given or the sale had in pursuance thereof, as to the tracks so used by it or him, shall be jointly and severally bound with the said bidder absolutely and unqualifiedly to repair and keep in permanent repair the portion of said streets and avenues upon which the tracks shall be so constructed, between the tracks, the rails of the tracks, and a space two feet in width outside of and adjoining the outside rails of the track or tracks, so long as such tracks so constructed shall continue to be used, and this obligation in respect to the repairing of the streets shall not be dependent upon the requirements of the local authorities, but is hereby made an absolute and unqualified obligation."

It was further provided that:

"Any person or company who shall use or operate a railroad upon the tracks, or any part of the tracks, constructed upon the route hereinabove described, under or by virtue of the consent hereby given, or the sale had in pursuance thereof, shall be subject to the same conditions, liabilities, obligations, duties and payments in respect to such use or operation by him or it, of or upon such tracks, as the bidder to whom the sale shall be made under this consent would be subject were such use or operation by such bidder."

And by an ordinance adopted by the board of aldermen on September 19, 1892, and approved by the mayor October 8, 1892, consent was given to the Metropolitan Crosstown Railroad Company to construct, maintain, and operate an extension or branch of its route on West Broadway from Spring street to Broome street to be operated in connection with the railroad of the Broadway & Seventh Avenue Railroad Company as a continuous route. This consent was given upon the express condition that the said Metropolitan Crosstown Railroad Company would do and perform all that the law requires in such cases, and should be subject to all the limitations thereof. By section 98 of chapter 565, p. 1112, of the Laws of 1890 (as amended by chapter 676, p. 1404, of the Laws of 1892) it is provided that every street surface railroad corporation, so long as it should continue to use any of

its tracks in any street, avenue, or public place in any city or village, should have and keep in permanent repair that portion of such street, avenue, or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe; that, in case of the neglect of any corporation to make pavements or repairs after the expiration of 30 days' notice to do so, the local authorities may make the same at the expense of such corporation. It was then conceded by the defendant that the Metropolitan Crosstown Railroad Company, Metropolitan Street Railway Company, and Lexington Avenue & Pavonia Ferry Railroad Company were consolidated into the Metropolitan Street Railroad Company, and that the Interurban Street Railway Company became the lessee of the Metropolitan Street Railway Company, and that its name was subsequently changed to the New York City Railway Company (the defendant in this action) on or about the 28th day of December, 1903; that South Fifth avenue named in the consent was now known as West Broadway.

It further appeared that on the 6th day of June, 1905, there was served upon the vice president of the defendant a notice signed by the president of the borough of Manhattan which gave notice to the defendant that that portion of West Broadway from Dey street to West Fourth street between the tracks, the rails of the track, and two feet in width outside of the track of the street surface railroad used by the defendant in said West Broadway was out of repair and in need of repavement, and that the defendant was accordingly required to place and keep the same in repair under the supervision of the president of the borough of Manhattan and in such manner as he may prescribe; and that in case of the defendant's neglect to make such repavement or repairs after the expiration of 30 days from the day of service of the notice the president of the borough of Manhattan would proceed to make the same at the defendant's expense. Notice was also given that the city of New York was about to repave with wood block pavement the roadway of West Broadway in accordance with specifications on file in the office of the commissioner of public works, and that the repairs or pavements made by the defendant in accord with the foregoing notice must be in the manner prescribed in and by said specifications; that a contract for such repavement was about to be advertised for and let in the manner prescribed by section 419 of the Greater New York Charter (Laws 1897, p. 148, c. 378); that, in case of the defendant's failure to notify the president of the borough of Manhattan within five days after the receipt of such notice of the defendant's intention to repair and repave the said portion of West Broadway on its own account in the manner before prescribed and within 30 days of the date of the service of notice, the president of the borough of Manhattan would include the said portion of West Broadway in the contract before mentioned, and would hold the defendant liable for the payment of the expense thereof at the price fixed or to be fixed in said contract. It was then proved that on the 28th of October, 1905, the city of New York made a contract for the re-

paving of West Broadway, under which contract the street was subsequently repaved and the amount required therefor paid by the city of New York. The total amount paid by the plaintiff for the construction of this wood block pavement within what was called the railroad area in West Broadway occupied by the defendant was $6,556.73. After evidence by the plaintiff and defendant as to the condition of the pavement in this street, it was conceded for the purpose of the trial that:

"The pavement on West Broadway at the location mentioned in the complaint between the track, the rails of the track and two feet outside of and adjoining the outside rails of the tracks was in a good condition of repair, but that the general condition of the portion of West Broadway involved in this action outside of the 'railroad area' was in a bad condition of repair and a new pavement was necessary"

—and the court then directed a verdict for the plaintiff for the sum of $4,906.16, to which the defendant excepted.

There is thus presented the question as to whether the railroad company was bound to repave a street where the railroad company has maintained an existing pavement in good repair within the railroad area, but where the pavement of the street as a whole has become so out of repair that a new pavement was necessary, and the proper local authorities have determined that the public interests require that a pavement should be laid of a different character and description than that then existing in the street, and to construct the new pavement within the railroad area or any part thereof to conform to the new pavement to be laid in the remaining portion of the street. The defendant was occupying and using certain streets in the city of New York as a common carrier for the conveyance of passengers, for which it was authorized to receive and did receive compensation from the passengers carried. It had been granted a franchise for that purpose by the state with the consent of the city of New York, and as a condition of the use and occupation of the streets had agreed to be absolutely and unqualifiedly bound—

"to repair and keep in permanent repair the portion of said streets and avenues upon which the tracks shall be so constructed, between the tracks, the rails, the rails of the tracks and a space two feet in width outside of and adjoining the outside rails of the track or tracks, so long as such tracks so constructed shall continue to be used."

And, in addition to this obligation imposed upon the defendant by the consent under which it used the streets, section 98 of the railroad law imposed as the duty upon the defendant corporation to have and keep in permanent repair that portion of the said street, avenue, or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks under the supervision of the proper local authorities. The obligation thus imposed is not only to repair a pavement existing at the time the consent was given or which should from time to time be maintained in the streets by the municipal authorities, but to have and keep in permanent repair the portion of the street between the rails and for a space two feet outside of the rails.

If to keep the street in a proper condition for travel and to meet the

requirements of the public it became necessary from time to time to lay new and improved pavements in the street as a whole, it is quite evident that the street itself would not be in a proper condition for the use of the public if the new and improved pavements stopped two feet outside of each track of the railroad, leaving the antiquated pavements in use within this railroad area. The requirements of the public as to the pavement in each particular street must be determined by the municipal authorities having charge of the streets. They are charged with determining the question as to the proper pavements the public require and with the duty of providing such pavements to make the street available and convenient for public use, and it is but reasonable to require the corporation to whom are granted the franchise of using the streets to bear the expense of providing for a new pavement when the public use of the streets required it to be substituted for an existing pavement. It seems to me that this was in the contemplation of the parties when the ordinance consenting to the use of the street by the railroad company was passed by the common council and accepted by the railroad company, and within the intention of the Legislature when it imposed the duty to have and keep in permanent repair a specified portion of a street on a corporation which was authorized to use the street. In no other way could the streets be kept in a proper condition for public use than by requiring these corporations from time to time to repave the streets within the railroad area when the public interests required that the remaining portions of the streets should be paved with an improved pavement.

The Court of Appeals has decided that such is to be the construction given to obligations of this character. In Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395, in construing section 98 of the general railroad law, that court held that this section provided that the streets within the railroad area should be kept in repair by the railroad corporation using the street; that this provision is mandatory, and the municipal authorities were given no authority to relieve the railroad corporation of the whole or any part of the needed repairs, or to impose the whole or any portion of the cost upon abutting owners or the city at large; that the statute undertakes to provide the method by which the duty enjoined by the statute was to be enforced by providing that such repairs shall be made under the supervision of the proper local authorities, whenever required by them to do so and in such manner as they may prescribe; that under this statute the local authorities were vested with the authority of determining when the repairs should be made, and, when the local authorities decided that the entire street should be repaved and the material to be used should be asphalt, the statute intervenes and requires the railroad company to make the repairs thus ordered under the supervision of the local authorities; that the language employed in this section is broad enough to include repavement as well as repairs; and thus when the local authorities determined that the street should be paved with a certain material the statute imposed upon the railroad company the obligation to lay such pavement as the local authorities had prescribed for the street within the railroad area. In Mayor, etc., of N. Y. v.

H. B., M. & F. Ry. Co., 186 N. Y. 304, 78 N. E. 1072, the statute required the railroad company to keep the surface of the streets alongside the rails and for one foot outside thereof in good and proper order and repair and conform the tracks to the grades of the streets and avenues, and it was held that when the proper authorities, in view of the condition of the street as shown to exist, decided that a granite block pavement should be laid, the requirement of repairing and keeping in good order the surface of the street compelled the defendant to coöperate with the city and put the space between its rails in the same condition as the rest of the street, even though that necessitated the laying of a new pavement. Neither the provision of the statute nor the decisions based upon it make the obligation depend upon the actual state of repair of the old pavement between the tracks. It is the condition of the street as a whole that is to be considered, and when the public interests require that the street should be paved with a particular kind of pavement the statute imposes upon the railroad corporation the obligation to keep the portion of the street specified in permanent repair by repaving it in the same way and with the same material as the balance of the street.

The defendant also takes the position that it had a constitutional right to be heard as to the question whether the requirement to lay the new and improved pavement was reasonable and proper. But this claim, we think is based upon a misconception of the nature of the obligation imposed upon the railroad company. As before stated, the statute has directly imposed the obligation upon a railroad company using the tracks. It imposes no obligation upon the railroad company to use the tracks, but as a condition of such use, and as compensation to the city for the use of its streets by the railroad company, the condition is imposed that it shall bear the cost of keeping the streets in proper repair within the railroad area. Such an obligation is not taxation or the imposition of an assessment for the benefit derived by the property assessed by reason of a local improvement. The statute authorizes the public officials who have charge of the streets to determine when a new pavement should be laid, and then requires the railroad company to pay the expense of such new pavement within the railroad area. When the railroad company accepted the franchise to use a public street, it accepted the obligation to discharge the conditions imposed by the sovereign power as a condition for such use. We think that under the charter the borough president was the proper local authority to determine when and how and under what circumstances a street should be paved, subject, of course, to the control of the board of estimate and apportionment. There was no quasi judicial or legislative power delegated to the borough president, but the borough president, having under section 383 of the charter cognizance and control of the paving, repaving, resurfacing, and repairing of all streets and of the relaying of all pavements removed for any cause, and the board of estimate and apportionment having granted a sum of money for the purpose of repaving the streets in the borough of Manhattan, it was within the jurisdiction of the borough president to provide for the repaving of this street, and the borough pres-

ident thus became the proper local authority within the section of the statute.

The other objections to which our attention has been called by counsel for the appellant do not require discussion.

It follows that the judgment appealed from must be affirmed, with costs. All concur.

***

## LAMPMAN v. SYRACUSE & S. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

Appeal from Trial Term, Onondaga County.

PER CURIAM. Judgment and order affirmed, with costs.