to build his walk; but if he does not obtain it, or the walk is not built under his permit, it is a violation of the ordinance for any person to build it.

I favor a reversal.

<hr />

PEOPLE ex rel. BUFFALO & L. E. TRACTION CO. v. STATE BOARD OF TAX COM'RS et al.

(Supreme Court, Special Term, Erie County.  June, 1912.)

1. TAXATION (§ 150*)—ASSESSMENT—RAILROADS—PAVEMENT.

It was improper, in assessing the property of a traction company, to include as a part of its tangible property pavement laid by it solely for the benefit of pedestrians upon the highway; such pavement being the property of the municipality.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 267–269; Dec. Dig. § 150.*]

2. TAXATION (§ 376*)—ASSESSMENT—VALIDITY.

Where the assessment of a traction company's special franchise was presumptively correct, but a street pavement was improperly assessed as part of its tangible property, the assessment was invalid and could not be added to the value of the corporate franchise, though the pavement constituted a part of the cost of construction.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

3. TAXATION (§ 376*)—ASSESSMENT—RAILROADS—VIADUCT.

A viaduct necessary for the operation of a railroad, and in which the railroad company had a substantial property interest, was properly assessed against the company as part of its tangible property, though the public also had a right to use it.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Certiorari by the People, on the relation of the Buffalo & Lake Erie Traction Company against the State Board of Tax Commissioners and others to review an assessment.  Assessment modified.

Edward H. Letchworth, for relator.

Thomas Carmody, Atty. Gen., and C. R. McSparren, Deputy Atty. Gen., for defendants.

WHEELER, J.  This is a proceeding by certiorari for the purpose of reviewing an assessment made by the State Board of Tax Commissioners upon the property and franchises of the relator in the town of Westfield, Chautauqua county.  The case is stipulated by the parties, and is submitted upon the following agreed facts:

"First. All facts necessary to make the special franchise assessment reviewed in this proceeding regular and valid on its face were performed by the State Board of Tax Commissioners.

"Second. All facts necessary to entitle the relator to institute and maintain this proceeding were performed by the relator.

"Third. The present value of property in streets, highways, public places, and public waters on basis of cost of reproduction new is $179,979.35, including the viaduct and pavement hereinafter mentioned.

"Fourth. The present value of property in streets, highways, public places,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and public waters, allowing depreciation, is $152,723.35, including the viaduct and pavement hereinafter mentioned.

"Fifth. The assessment includes an item of $55,000, tangible property representing the value of the so-called Westfield Viaduct after deducting the amount contributed by the town of Westfield toward its construction pursuant to the provisions of a contract between the town of Westfield, the highway commissioner of said town, and the relator, dated October 13, 1908, a copy of which is hereto annexed and marked 'Exhibit A.'

"Sixth. The assessment includes an item of $12,656, tangible property, representing the present depreciated value of the pavement between the tracks of the relator and for two feet outside of said tracks. The relator was required to have and keep this pavement in permanent repair, under the provisions of section 98 of the Railroad Law, being Laws of 1890, c. 565, as amended by Laws of 1892, c. 676.

"Seventh. Other real property in the same tax district with the special franchise herein and upon the same roll is assessed at 80 per cent. of full and actual value."

The relator contends that it has been erroneously assessed, not only for the so-called Westfield Viaduct, but for the item representing the value of the pavement between the tracks and two feet outside thereof, required by section 98 of the Railroad Law to be laid and kept in permanent repair by the relator.

[1] So far as the pavement is concerned, it is urged by the relator that such pavement is no part of the "tangible property" of the Traction Company; that the pavement is a part of the public highway, is the property of the municipality, attached to and an incident of the soil of the street, and differs in this respect from such tangible property as the rails, ties, poles, and other things used in the construction of a street surface railway, all of which belong to the company, and may be taken up, carried away, and disposed of as its property; that a street pavement forms no part of the construction of the railroad, but is laid and maintained entirely for the use and benefit of those having occasion to travel the highway and pass over it, and the portion of the pavement between the rails and two feet either side thereof differs in no respect from the rest of the paved street. This position, we think, is well taken, and we are of the opinion that such pavement, though laid by the railroad, cannot properly be said to belong to or be the "tangible property" of the company. We think such pavement must be deemed the property of the municipality.

[2] The defendants, however, contend that it makes little difference whether the pavement is deemed the property of the relator or of the municipality, for, if not taxable as tangible property, it constituted a part of the cost of construction, and should be considered as adding just so much value to the value of the corporate franchise giving the right to operate over the public highway. In support of this contention the Attorney General relies upon the recent decision of the Court of Appeals in the case of People ex rel. Niagara Falls Hydraulic Power & Mfg. Co. v. State Board of Tax Commissioners, 202 N. Y. 426, 95 N. E. 754.

In that case, the relator, when it enlarged its hydraulic canal, agreed to construct and maintain certain bridges over it where certain streets crossed and intersected it. The relator contended that these bridges became the property of the municipality of Niagara Falls, and that it

should not be assessed and taxed for them as its tangible property, but should only be taxed for the privilege of crossing and severing the streets of the city. Chief Justice Cullen, speaking for the court, said:

"Assuming for the discussion that the bridges became the property of the municipality, the only effect of that assumption is to increase the value of the special franchise to cross the streets. For this privilege, the relator agreed to pay the cost not only of the construction of the bridges to be built by it, but also their subsequent maintenance, and we may assume that the privilege was worth what the relator agreed to pay for it."

In that case this observation was very pertinent, in view of the specific finding of the trial court to the effect that as matter of fact the valuation of the relator's special franchise had been fixed too low, and at less than the actual value of the franchise, and the Court of Appeals properly said that, before the assessment could be reduced by the court, "it was incumbent on the relator to affirmatively show that the assessment imposed by the respondent was excessive."

It is manifest, therefore, as the record stood, the court could not reduce the assessment attacked by eliminating the bridges over the canal.

The case now before us for discussion is clearly distinguishable from that of the Niagara Falls Hydraulic Power & Manufacturing Company. In this case we have no finding, as in that, that the valuation of the special franchise is too low. On the contrary, upon the stipulated facts, we must assume that the value of the *special franchise* of the relator in the town of Westfield has been fixed at its real and true value. This valuation the stipulation does not give in detail, or undertake to separate from other property. The parties, however, have stipulated that the total assessment of $152,723.45, covering both tangible property and special franchise value, includes an item of $12,656 for pavement as *"tangible* property." We must assume, nothing appearing to the contrary, that the Board of Tax Commissioners performed their duty, and correctly valued the special franchise enjoyed by the relator, and that, after deducting the paving item of $12,656 from the total assessment, the balance, to wit, $140,067.45, represents the true and actual value of all the relator's other taxable property, including the actual value of the company's "special franchise" in the public streets.

If, therefore, the pavement was improperly assessed as tangible property of the relator, when it does not belong to it, the respondents are in no position to insist in this case that the cost of the pavement should be added to the valuation of the special franchise; otherwise, upon the agreed facts, the amount of the assessment for special franchise would be improperly and erroneously increased beyond its true value.

The duty imposed by section 98 of the Railroad Law to pave between and two feet outside the rails, simply imposes an obligation to do something for the benefit of the municipality. The municipality gets the benefit of the performance of the duty, not the railroad company, and the improvements when made become the property of the

municipality, and in no sense can be regarded as the "tangible property" of the railroad.

This obligation to pave imposed by the statute is rather in the nature of a tax on the corporation enjoying the special franchise to operate its railway in public streets.

In the case of City of Rochester v. Rochester Ry. Co., 182 N. Y. 113–117, 74 N. E. 953, 958, 70 L. R. A. 773, the question involved was whether the defendant by virtue of an act of the Legislature relieving it from the expense of new pavements in the city of Rochester, passed in 1869 (Laws 1869, c. 34), acquired such a right that the Legislature could not, by subsequent legislation, impose such a burden of paving on the defendant. It was held that the Legislature had such a power, for the reason that the statute passed was "in the exercise of the powers of taxation and police, and not a grant," and that the power to tax could not be contracted away.

It has accordingly been held that a street railroad company may be compelled to relay a pavement between its rails, even though it was in good repair, where the municipality decides to repair the whole street. City of New York v. N. Y. City Ry. Co., 132 App. Div. 156, 116 N. Y. Supp. 939.

The Attorney General urges that the precise question presented as to whether paving is to be treated, for the purpose of taxation, as tangible property of the railway company, was passed on adversely to the relator's contention in the case of People on the relation of N. Y. C. & H. R. R. Co. v. Woodbury et al., 203 N. Y. 167, 96 N. E. 431.

The record in that case shows that the trial court was requested to find:

"That in each and every street, highway and public place in the city of Buffalo, occupied by the tracks of the relator, planking, paving, and sidewalks upon, between or adjacent to said tracks, maintained there for the general travel of the public, whether maintained by the relator or by the city of Buffalo, are not the property of the relator, but are public property."

The request to find was refused. On the appeal in the Court of Appeals the relator in its brief made, as its last point, the following:

"Point 9. The planking and paving placed in grade crossings by the relator for the benefit of the public solely are not taxable as property of the relator."

This point was not further enlarged on in the brief, and was not orally argued before the court, but the point seems to have been only perfunctorily raised in the manner indicated. The main questions raised and discussed in the proceeding were of an entirely different and graver character. The Court of Appeals, in its opinion, in no way touches on or discusses the point under consideration, but did say in closing, that:

"All the other contentions of the relator, after due consideration, are overruled without discussion."

It is therefore contended that the Court of Appeals has, at least inferentially, held that a pavement such as is involved in this case is taxable as property of the relator.

If the question was ever, in fact, considered by the Court of Appeals, we at least have nothing in the opinion to inform us as to the grounds on which the matter was disposed of. We have examined the record in that case, which shows that on grievance day no objection was raised before the assessors that such pavement was improperly included in the assessment. The petition for the writ of certiorari contains no such allegation. We are unable to discover from the record that as matter of fact the value of the planking and pavement was in fact included by the State Board of Tax Commissioners as part of the "tangible property" of relator.

In any event, it seems to us the request was too broad, as it included "planking" as well as "pavement." In view of all these facts, we are of the opinion the Court of Appeals did not assume to pass on the question now under consideration, or intend to express any opinion on the merits of such a controversy, and we cannot, therefore, deem the case as controlling.

[3] In regard to the question as to the item of $55,000, included in the assessment for the viaduct in question, a different question is presented. It appears by the recitals of an agreement made between the town of Westfield, Henry C. Miller, highway commissioner of said town, and the relator: That the relator had filed with the town clerk plans and specifications for a bridge and approaches to be built across Chautauqua creek on the Buffalo & Erie Road or highway, and that, upon the petition of 25 taxpayers of the town of Westfield, a special town meeting was called for voting on the following proposition:

"Shall the town of Westfield construct a bridge and approaches thereto across Chautauqua creek on the Buffalo & Erie Road extending from the grade of the street at the top of the hill on the east side, to the top of the hill on the west side, said bridge and approaches being approximately nine hundred feet in length at a cost to the town of Westfield of not exceeding thirty-five thousand dollars ($35,000), and issue the necessary certificates and bonds therefor, and borrow money thereon, and raise annually by tax a sum sufficient to pay the interest and the principal as the same shall become due?"

And that at said town meeting the proposition was carried by a large majority of the qualified electors of the town. That thereupon the said parties entered into a written contract, whereby the relator agreed:

"To construct a viaduct or bridge and approaches thereto, in the town of Westfield, across Chautauqua creek, * * * according to the plans and specifications now on file in the office of the clerk of the town of Westfield, Chautauqua county, N. Y., and heretofore approved by the State Engineer."

The relator, the Traction Company, further agreed that:

"The public is to have at all times the right of free and uninterrupted passage over said bridge, viaduct and approaches, and every part thereof, and that the same is to be so constructed and maintained that the public shall have access to every part thereof for passage over the same as a public highway."

The relator agreed to save the town harmless from all claims or demands against the town for consequential damages by reason of the construction of said viaduct, and also to expend in the construction of the bridge at least $95,000, exclusive of direct or consequential damages. It further agreed that the Westfield Telephone Company, and

the Welch Gas Company of Westfield, should have the right, without compensation to it, to construct and maintain cables and pipes across said bridge. A like provision was made for cables and wires for an electric light system. The relator also agreed "to maintain, repair, and if necessary, reconstruct said bridge, viaduct and approaches, and each and every part thereof during the term of the franchise" of said relator.

The town of Westfield agreed "to pay the party of the third part" (the relator) "toward the construction of said bridge, viaduct and approaches, the sum of thirty-five thousand dollars," being the sum voted at the town meeting.

The town and the highway commissioner agreed and consented that the relator might "maintain and operate its railroad upon and along said bridge, viaduct and approaches * * * for the period of ninety-nine (99) years from the 1st day of July, 1903"; but in case the relator refused or neglected to maintain, repair, or reconstruct said bridge, as provided, after notice to do so, "then any and all rights of said party of the third part * * * to so maintain and operate its said railroad upon and along said bridge, may at the option of the said party of the first part, be terminated and become null and void."

It is further "expressly understood and agreed that the said bridge, viaduct and approaches thereto shall at all times and for all purposes be and be deemed a public highway."

Such are the terms of the agreement between the town and the relator in reference to said bridge or viaduct.

It will be noted that the structure was and is just as necessary for the operation of the relator's railroad as are the ties laid in a street to support its rails. In that sense it is a part of the very structure of the railroad, and necessary for its operation, and therein differs from mere pavement laid in a street for the sole benefit of the traveling public. It was built at the joint expense of the relator and of the town, and it would seem that if, at any time, it became necessary to take down and replace the structure with a new one, under the agreement the old parts would be the property of the relator. At least, the relator has a substantial property interest in the structure itself, aside from the mere right to cross it.

We are of the opinion it has an insurable interest in the tangible property of the viaduct; and in view of the terms of the agreement such an interest, however qualified, justified the State Board of Tax Commissioners treating it as an interest in tangible property, and they did not err in so including it in their assessment. In other words, the cost of the viaduct was a part of the cost of construction of the railroad represented by tangible property, which both the relator and the public had a joint right to use.

The Tax Law defines the terms "land," "real estate," and "real property," as used in this chapter, as including "all surface, underground or elevated railroads, including * * * all railroad structures, substructures and superstructures, tracks and the iron thereon. * * *" Laws of 1896, c. 908, § 2, subd. 3.

So far, therefore, as the item of $55,000 for the viaduct is con-

cerned, we think the assessment must stand as made; but the item of $12,656, representing the present depreciated value of the pavement between tracks of the relator and for two feet outside of said tracks, should be deducted from the assessment as made. Inasmuch as each party has prevailed in part, and failed in part, no costs will be awarded to either