PEOPLE ex rel. METROPOLITAN ST. RY. v. STATE BOARD OF TAX COM'RS et al. (12 other proceedings).

(Supreme Court, Special Term, New York County. November 27, 1912.)

1. TAXATION (§ 366*)—ASSESSMENTS—FRANCHISE TAXES—REPORTS.

Where street railway companies composing one system furnished the State Board of Tax Commissioners all the information in their power as to the system in order to enable the board to assess the franchise taxes, there was a sufficient compliance with Tax Law (Consol. Laws, c. 60) § 44, requiring such reports to entitle the companies to bring certiorari to review the assessment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 612–619; Dec. Dig. § 366.*]

2. TAXATION (§ 496*)—ASSESSMENTS—OBJECTION.

On certiorari to review the assessment of franchise taxes by the State Board of Tax Commissioners, the claim of the relators that the franchise was worth nothing when assessed under the proper theory, will not preclude them from relief where the assessments were made on a wrong theory.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

3. TAXATION (§ 376*)—ASSESSMENTS—FRANCHISE TAXES—MODE OF ASSESSMENT.
   The value of franchises, as those of a street railway company, should be determined for the purpose of assessment under the net earnings rule, for the value of the franchise depends upon the profits.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

4. TAXATION (§ 376*)—ASSESSMENTS—FRANCHISE TAXES.
   Where the property of a street railway company is in the hands of a receiver, the value of the company's franchise must be determined under the net earnings rule, for, while the value might be determined by comparing the value of the outstanding stocks with the tangible property owned, that mode is useless where the corporation is insolvent.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

5. TAXATION (§ 376*)—ASSESSMENT—FRANCHISE TAXES—NET EARNINGS RULE.
   In determining the value of a street railway franchise under the net earnings rule, the gross earnings and other income are to be determined, from which shall be deducted taxes and operating expenses, including renewals and repairs, and the net income left shall be capitalized on a basis of 6 per cent. interest, to which shall be added the value of the tangible property in the streets, and the total constitutes the full value of the special franchise.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

6. TAXATION (§ 376*)—ASSESSMENTS—FRANCHISE TAXES.
   Under Tax Law (Consol. Laws, c. 60) § 48, relating to deductions from special franchise taxes and providing for deductions of gross earning taxes, payments of car license fees, which are in the nature of gross earning taxes, cannot be deducted.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

7. TAXATION (§ 376*)—ASSESSMENTS—FRANCHISE TAXES—DEDUCTION.
   In computing the value of franchise taxes, the railroad company is not entitled to deduct the value of pavements laid by it in the street in the space filled by its tracks.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

8. TAXATION (§ 376*)—FRANCHISE TAXES—ASSESSMENTS—APPORTIONMENT.
   Where a number of street railway lines were operated as one system and the value of the entire franchise tax was computed on the net earnings of all, the taxes must be apportioned according to the net earnings of each line.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Certiorari by the People, on the relation of the Metropolitan Street Railway, to review the assessments of the State Board of Tax Commissioners in which the City of New York intervened. Assessments modified.

See, also, 159 App. Div. 136, 144 N. Y. Supp. 74.

Arthur H. Masten, Wm. Coleman, and Alfred Ely, Jr., all of New York City, for plaintiff.

William McQuaid, Atty. Gen., for State Board of Tax Com'rs.

Curtis A. Peters and Addison B. Scoville, both of New York City, for city of New York.

McCALL, J. Certiorari to review assessments for special franchise tax. In these thirteen proceedings the relators, corporations engaged

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the operation of street railways in the city of New York, and forming the system known as the Metropolitan Street Railway, complain of an assessment, in gross, in the sum of $58,000,000, fixed by the respondent board of tax commissioners as the value of the special franchise of these corporations for the purposes of taxation for the year 1910. The proof before me has been directed to the proposition that according to what is called the net earnings rule (People ex rel. Jamaica Water Supply Co. v. Tax Comm'rs, 196 N. Y. 39, 89 N. E. 581) these special franchises have been greatly overvalued in the assessments under review; indeed, it is the relator's contention that, in the most favorable view of their evidence, an application of the net earnings rule shows an absence of any value whatever.

[1] For the respondent board of tax commissioners it is urged that the proceedings should be dismissed upon the ground that the relators are debarred from relief by certiorari because of their alleged failure to furnish information deemed necessary by the board from time to time with respect to details of the properties and business of these corporations (Tax Law, § 44), and upon the merits it is claimed by the city of New York, an intervening party, that the relators have failed to show error in the fixing of the assessments such as should lead to a revaluation upon a hearing de novo. Without attempting a detailed discussion of the matters contained in the various reports submitted by the relators to the board of tax commissioners, in answer to requests made by the board for information under section 44 of the Tax Law, my conclusion is that there was a substantial and sufficient compliance with the statute, that all the information available to the relators was given in good faith, and that no case of a failure to make reports, in answer to directions of the board, is indicated sufficiently for a motion to quash the writs pursuant to that section. Indeed, the matter was presented to the justice before whom the hearings were instituted, and the motion for dismissal was denied; but, if I am to treat the question as open to further discussion at the close of the case, my ruling is in favor of the relators.

[2-4] The contention of the city of New York that the proof fails to disclose a case for revaluation of the property assessed proceeds upon the ground that, assuming the "net earnings" rule to show an overvaluation, the application of this particular rule was not exclusive, and that, all presumptions being in favor of the validity and correctness of the assessment, it was incumbent upon the relators to negative any theory upon which the valuations reached might be sustained. Furthermore, it is argued that since the relators have gone so far as to claim that the special franchises have no value, tested by the condition of the net earnings, this test must itself be rejected, as intimated in the Jamaica Water Supply Case, 196 N. Y. 39, 89 N. E. 581. As I view the evidence, the net earnings rule gives a very substantial value to these franchises, and the fact that the relators have made too broad a claim of overvaluation does not affect the question whether upon the proof the condition of the net earnings would afford the proper measure of valuation. Doubtless, as the court suggested in the case above cited, an arbitrary theory of valuation which would indicate no value in something of possible worth must be potentially unsound, but here,

the actual adoption of the net earnings rule discloses a value in these franchises with fairness and certainty, and, so far as the relators are called upon to negative the propriety of any other theory, the facts of the case suffice in discharge of the burden.    It can hardly be disputed that the value of a right to conduct a business for profit depends upon the opportunities of obtaining that profit, and where the business is shown to be so conducted that its opportunities are availed of with reasonable diligence and are not sacrificed, an accurate statement of the profits obtained would afford the true basis of value.    This rule is recognized in all cases dealing with the subject (People ex rel. Jamaica Water Supply Co. v. Tax Com'rs, supra; People ex rel. B'klyn Heights R. v. Com'rs, 69 Misc. Rep. 646, 127 N. Y. Supp. 825; People ex rel. Hudson & Man. Ry. v. Com'rs, 143 App. Div. 26, 127 N. Y. Supp. 918; People ex rel. Third Ave. R. v. Com'rs, 136 App. Div. 155, 120 N. Y. Supp. 528), and while an alternative theory of comparing the value of outstanding stock and bonds with the tangible property owned may be resorted to (People ex rel. B'klyn Heights R. v. Com'rs, supra, and People ex rel. Water Co. v. Woodbury, 67 Misc. Rep. 490, 123 N. Y. Supp. 599), or, failing a fair exhibition of earnings, the return from a prior lease of the property and franchise may be considered (People ex rel. Fulton St. Ry. v. State Board, etc., 146 N. Y. Supp. 80), the alternative methods of valuation have been adopted only because the particular conditions of operation were such that the actual profits during the period considered did not fairly indicate the value of the franchise.    In the present case the actual state of the earnings appear to be the only fair test of values; every condition which has led to the adoption of that test to the exclusion of others is present, and the only alternative theories which have been found available in some cases (failing a proper case for the net earnings rule) have no reasonable application here.    There is no leasehold for comparison, and the fact that this railway system was operated by receivers in foreclosure during a period commencing some two years prior to the assessment date would seem effectually to dispose of the "stock and bond" rule as affording an indication of franchise values in any way fair to the state.    I am of the opinion, therefore, that these franchises should be valued by resort to the rule of comparison based upon earnings; that this is the only rule of valuation which was reasonably open to the respondent tax board to follow, and the assessment should be reduced to the amount shown by the computation which I have adopted, according to my determination of the facts as to the values in dispute, and of the propriety of certain charges or credits in making up the account of net earnings as matters of law.

[5] Following the principles announced in the Jamaica Water Supply Case, above cited, as to the method of computation under the net earnings rule, the gross earnings from the operation of the system and other income from the properties used in connection with the franchise are to be determined.    Deducting the fair amount of operating expenses (which would include renewals and repairs) and taxes, the balance would represent the net income.    Allowing a 6 per cent. return upon the tangible property used in connection with the special fran-

chise, and deducting this from the net income, the balance of income should be capitalized at 6 per cent. As so capitalized, the amount would represent the value of the intangible right entering into the special franchise, to which amount is to be added the value of the tangible property in the streets. This would give the full value of the special franchise, assessable at 90 per cent., for purposes of equalization with the general assessment rate. The following is a summary statement of the valuation adopted by me upon the evidence:

| | |
|---|---:|
| Gross earnings (cash fares for year 1909) | $12,765,961 11 |
| Operating expenses during same period | 8,331,349 19 |
| Net earnings | 4,434,611 92 |
| Other income for year 1909 | 280,776 45 |
| Total income for year 1909 | 4,715,388 37 |
| Deductions for taxes and rents | 979,704 23 |
| Net income for year 1909 | 3,735,684 14 |
| Value of tangible property in streets | 18,048,157 00 |
| Tangible property outside of streets | 27,595,058 00 |
| Total value of tangible property | 45,643,215 00 |
| Six per cent. return on value of tangible property | 2,738,592 90 |
| Amount of income to capitalize | 997,092 24 |
| Income capitalized at 6 per cent........... $16,618,204 00 | |
| Add value of tangible property in the streets.... 18,048,157 00 | |
| Full value of special franchise | 34,666,361 00 |
| Equalized at 90 per cent. for purposes of assessment | 31,199,724 90 |

In determining the amount allowable for operating expenses I have included the following items:

| | |
|---|---:|
| Maintenance of way and structures | $1,602,201 11 |
| Maintenance of equipment | 1,014,347 38 |
| Operation of power plant (electric) | 571,074 74 |
| Operation of power plant (horse) | 206,388 25 |
| Operation of cars | 3,353,708 61 |
| Injuries and damages expended | 978,329 76 |
| General miscellaneous | 605,299 34 |
| | $8,331,349 19 |

So far as there is a dispute between the parties relative to the charges for maintenance, I find from the evidence that the amounts above stated correctly represent expenditures for actual maintenance during the year 1909, and do not include items of outlay for betterments as distinguished from necessary renewals and repairs. I have therefore allowed the sums expended in place of adopting a theoretical percentage of depreciation, and have included in the item "general miscellaneous" an allowance of $5,602.62 claimed by the relators for maintenance of equipment of horses. Under the heading of "other income" I find that the following items should be allowed:

| | |
|---|---:|
| Advertising | $240,250 00 |
| Billboards | 3,286 68 |
| Rent of tracks | 8,143 37 |
| Rent of ducts | 4,140 72 |
| Interest on deposits | 24,909 48 |
| Miscellaneous | 46 20 |
| | $280,776 45 |

I have not included the disputed item of $40,245.06, representing rental for personal property leased to the Central Park, North & East

River Railroad Company, since this property was not used by the relators or the receivers in street railway operation, and for the purposes of an income statement affecting the value of the special franchise the item should not appear. The following amounts are allowed as representing deductions for taxes and rents during the year 1909:

| | |
|---|---:|
| Capital stock, etc. | $ 21,104 74 |
| Gross earnings (state) | 121,006 57 |
| Special franchise | 432,465 80 |
| Real estate | 209,715 49 |
| Personal property | 667 85 |
| Rent of track | 47,109 53 |
| Rent of ducts | 9,489 00 |
| Rent of land and buildings | 137,141 85 |
| Rent of equipment | 586 73 |
| Rent of facilities | 416 67 |
| | $979,704 23 |

[6] In the item "rent of track" I have not allowed bridge tolls as claimed for the relators, and I have eliminated items of payments, in the nature of a tax, for percentages of gross earnings, "stipulated rents," and car license fees. Pursuant to the statute (Tax Law, § 48), the payments are to be deducted from the tax payable upon the basis of the assessment now involved, and while it might appear reasonable to allow the items as a charge subject to which the franchise was enjoyed, when estimating the net income the words of the statute have been construed to limit the credit which may be claimed for payments of this character and to require that the amounts paid be excluded from the estimates of burdens upon the franchise. Heerwagen v. Crosstown Co., 179 N. Y. 99, 106, 71 N. E. 729. In fixing the value of tangible property in the streets, upon which an interest return should be allowed, I have adopted the estimates given by the witness for the relator as to the actual value and cost to reproduce. The addition of further items, sought to be justified by the testimony of another witness called, to include engineering expenses and interest charges, is not consistent with the relator's own proof of values, and the evidence is not sufficiently clear to support a finding of value beyond the sum of $18,048,157.

[7] I am not impressed with the relator's claims asserted after submission of the proceedings and based upon the recent decision in People ex rel. Buffalo Co. v. Tax Com'rs, 77 Misc. Rep. 235, 136 N. Y. Supp. 474, that pavement within the area of the street trackage cannot be included as actual property of the railroad company in the street for the purposes of this assessment. While the pavement was not strictly, in a mechanical sense, essential to the operation of cars, and its construction and maintenance by the railroad company were required by law for the apparent benefit of the city, as a condition to the right to build and use the trackage, the pavement still represents tangible property of the company, employed as an incident to the laying down of tracks under the conditions, whether legal or physical, which entered into the problem of construction. So employed, this property was as necessary to the operation of the road as the tracks themselves, and,

equally with the tracks, obtained its usable and practical value to the relator from the franchise now assessed. In apparent harmony with this view, a ruling that the pavement is assessable in these proceedings has been twice expressed by the Court of Appeals (People ex rel. Niagara Falls Company v. Commissioners, 202 N. Y. 426, 95 N. E. 754; People ex rel. N. Y. Central, etc., R. Co. v. Woodbury, 203 N. Y. 167, 96 N. E. 431), and I am unable to agree with the theory of distinction of these authorities adopted in the opinion of Special Term in People ex rel. Buffalo Co. v. Tax Com'rs, supra. Following are the items which I include in fixing the value of tangible property in the streets:

| | |
|---|---:|
| Electric track and roadway. | $12,157,246 |
| Ducts | 2,259,955 |
| Feeders | 2,494,589 |
| Fourth avenue tunnel | 470,947 |
| Horse track and roadway | 665,420 |

Upon the disputed items entering into the total of $27,595,058 for tangible property outside of streets I have allowed the relator's claim of a working capital of $1,498,536 and have fixed the real estate values as follows: For land, $8,783,914; for buildings, apportioned in value according to use for railroad purposes, $6,659,583. The actual assessment against all the relators should be $31,199,724.90, as herein set forth, and the amount should be apportioned in accordance with the proportion of tangible property in the streets owned by each.

[8] Since these properties were properly to be treated as a unit for the purposes of the valuation of the special franchise (see People ex rel. Met. St. Ry. v. Tax Com'rs, 174 N. Y. 417, 442, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674), and since the earnings could not be separately proven, but were of necessity to be shown as resulting from the operations of the railway system taken as one enterprise, a proportionate division of the tax, based upon the net earnings rule, must be resorted to. The board of tax commissioners cannot be presumed to have had any advantages in their determination of the facts beyond such as were available to the court, and in theory of law any fixing of the assessments as against each of these relators must have been based upon the state of the net earnings of the system, with some apportionment of the gross assessment as between the different corporations, if the proper rule were adopted. To say, as contended by the respondent, that the assessments must be sustained because the relators cannot give proof of the net earnings of each corporation, would involve the asumption that the board of commissioners determined upon proof and not upon surmised facts which were never susceptible of proof at all. Proposed findings may be submitted in accordance with this opinion upon notice of settlement.